SARATOGA HARNESS RACING ASSOCIATION, INC., Respondent, *v.* JESSE Moss et al., Defendants; DAVID BUCKSON et al., Appellants.

Third Department, December 27, 1966.

*Jesse Moss,* in person (*Jesse Moss* and *Richard Allan* of counsel), for appellants.

*Dillon & Olson* (*N. Le Van Haver* and *David W. Morris* of counsel), for respondent.

HERLIHY, J. The appellants are nonresidents of the State of New York and were served outside of the State. The issue is whether or not there has been a showing that they committed a '' tortious act within the state ''.

Subdivision (a) of CPLR 302, as pertinent, reads:

'' § 302. Personal jurisdiction by acts of non-domiciliaries.

'' (a) Acts which are the basis of jurisdiction. A court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, as to a cause of action arising from any of the acts enumerated in this section, in the same manner as if he were a domiciliary of the state, if, in person or through an agent, he:

'' 1. transacts any business within the state; or

'' 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act ''.

The appellant corporation is a national association, organized pursuant to the laws of the District of Columbia and apparently is engaged in the interest and furtherance of harness horse racing. The Northeastern Harness Horsemen's Association (hereinafter referred to as Northeastern) is territorial in scope and it entered into a contract, dated July 20, 1965, with the plaintiff on behalf of its member horsemen.

The complaint alleged upon information and belief that Moss, Buckson and Smith during 1964 and 1965 conspired to interfere with " the free exercise of activity in the conduct of business " by horse race tracks and horse owners throughout the United States and Canada. Thereafter, it is alleged upon information and belief that these defendants organized the appellant Harness Horsemen, International association and it employed Shehan, all in furtherance of this scheme. It then specifically alleged that in June and July of 1965 the defendants at Saratoga Springs convinced owners and trainers not to enter their horses at Saratoga Springs in races conducted from July 10, 1965 to July 20, 1965. The complaint also alleged that " Moss, Buckson and Smith entered into said arrangement or combination maliciously and without any cause therefor and with intent wrongfully to interfere with the proper exercise of activity in the conduct of harness horse races by plaintiff ". It further alleged that an illegal boycott, for which damages are sought, was effective at the Saratoga Raceway from July 10, 1965 to July 20, 1965.

The second cause of action set forth in the complaint alleged an implied contract between owners and trainers of horses and the plaintiff whereby their horses would be entered in plaintiff's races and that the activities of the appellants in Saratoga Springs during June and July of 1965 wrongfully interfered with such contract.

The appellants in response to the service of the summons and complaint in this action moved to dismiss on the ground that the court does not have personal jurisdiction. (See CPLR § 3211, subd. [a].) The affidavits, submitted on the motion by the appellants, admit that they were present in this State in July of 1965. Buckson said he was here for three hours some three days *after* the boycott commenced (either July 15 or July 16); Smith said he was here on July 15, 16, 19 and 20, 1965 which was after July 10 when the alleged boycott started; Shehan said he also was not in Saratoga Springs until July 15 and he stayed until July 20, 1965. All of the affidavits by the appellants assert that they in no way represented the appellant corporation on these admitted visits.

The affidavit of Philip Proller, representing the Northeastern Harness Horsemen's Association, in support of the motion to dismiss, states that as a result of the alleged boycott, racing was cancelled on July 14 and on July 15, 1965.

The affidavit of David W. Morris in opposition makes no assertion of any particular wrongful acts on the part of the

appellants, but does contain a newspaper article as an exhibit which indicates that the appellant corporation was in Saratoga Springs on July 17, 1965.

Assuming, for the purpose of the present motion, that the complaint states a cause of action, that fact of itself does not determine the issue of jurisdiction. In *Feathers* v. *McLucas, sub nom. Longines-Wittnauer* v. *Barnes & Reinecke* (15 N Y 2d 443) there was a sufficient legal complaint but no basis for jurisdiction pursuant to the section here in question. In that case the court said (pp. 461–462): "If, in fact, the Legislature of this State had intended to confer jurisdiction on the strength of injurious forum consequences alone, without regard to the locus of the commission of the tortious act itself, it would presumably have used language appropriate to reflect such a design. Thus, it could have made explicit provision for such situations as some states have done, or as proposed by the New York Law Revision Commission or by the Commissioners on Uniform State Laws in their model act, or it might have followed the lead of other states which require only that the ' tort ' be shown to have been committed within the state ' in whole or in part '. In sharp contrast, the Legislature chose to adopt language which, in so many words, demands that the ' tortious act ' be one committed by the defendant, ' in person or through an agent,' *within* this State." (Footnotes omitted.)

The plaintiff argues that a cause of action is pleaded under section 340 of the General Business Law, the violation of which is a misdemeanor under section 341 of the same statute. Section 340 is headed: " Contracts or agreements for monopoly or in restraint of trade illegal and void " and provides in part as follows: " 1. Every contract, agreement, arrangement or combination whereby  *  *  *  competition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state is or may be restrained  *  *  *  is hereby declared to be against public policy, illegal and void."

The allegations of the complaint and affidavit in support thereof infer that the boycott was actually between the plaintiff and Northeastern and it seems conceded that the final contract settlement was made with Northeastern and not with the appellants. There is no showing that Northeastern was an agent of any of the appellants.

It is uncontroverted that the boycott as set forth in the complaint started prior to the appellants' coming into this State and, therefore, their acts here had nothing to do with the com-

mencement of what is alleged to be an illegal and tortious boycott. The alleged agreement, arrangement or combination complained of in this complaint either relates to actions of the appellants outside of the State or to the acts of the trainers, owners and drivers prior to any acts of the appellants within the State insofar as section 340 of the General Business Law is concerned.

It is to be noted that section 340 of the General Business Law exempts certain organizations from the application of that section and also authorizes or protects '' the right of workingmen to combine in unions, organizations and associations, not organized for the purpose of profit.'' However, in view of our conclusions, we need not consider the effect of this exception on the pleading in this case. (See *People* v. *Gassman*, 295 N. Y. 254.)

So far as the present motion is concerned, the acts of the appellants while in the State appear to be those of encouragement and support of a decision made by Northeastern prior to their entry into the State. It could be analogized to an international union offering moral support to one of its local unions engaged in collective bargaining negotiations.

CPLR 302 (subd. [a]) is a procedural statute and in no way enlarges or extends the liability of the appellants. The plaintiff has the burden of proof and for the purpose of this motion must show by the complaint and supporting affidavits the essential requirements of the statute. Here, the complaint is general, but specifically alleges that the boycott became effective on July 10, and the only affidavit in support of the complaint is conclusory and does not controvert the allegations of the appellants that they were not within the State of New York when the boycott, the alleged tortious act, became effective. Therefore, the complaint and affidavit fail to specify any tortious act which would come within the specification of CPLR 302 (subd. [a]). (Cf. *Longines-Wittnauer* v. *Barnes & Reinecke, supra.*)

As to the further contention that the appellants by their acts in New York wrongfully induced the repudiation of implied contracts between the plaintiff and certain owners and trainers, it is obvious that this occurred prior to the visits of the appellants to Saratoga Springs. Since any act to be tortious must occur prior to the result complained of, there can be no jurisdiction based on such acts in this regard.

The plaintiff further contends that the appellants were transacting business in New York State. As to this contention, there is no showing in the complaint or the affidavits that any business of the individual appellants or the corporation was conducted in the State. Accordingly, jurisdiction cannot be sustained on this ground.

The order appealed from should be reversed and the motion of the appellants granted.

GIBSON, P. J., REYNOLDS, STALEY, JR., and BRINK, JJ., concur.

Order reversed and motion granted, with costs.