ARCATA GRAPHICS CORPORATION,
Plaintiff,

v.

MURRAYS JEWELERS & DISTRIBU-
TORS, INC., Formerly Peoria Sup-
pliers, Inc., Defendant.

Civ. No. 1973–621.

United States District Court,
W. D. New York.

Nov. 5, 1974.

Falk, Siemer, Glick, Tuppen & Malo-
ney, Buffalo, N. Y. (Kevin P. Maloney
and Edwin H. Wolf, Buffalo, N. Y., of
counsel), for plaintiff.

Jaeckle, Fleischmann & Mugel, Buf-
falo, N. Y. (David M. Brown, Buffalo,
N. Y., of counsel), for defendant.

CURTIN, Chief Judge.

The defendant, Murrays Jewelers &
Distributors, Inc. [Murrays], moves,

pursuant to Rule 12 of the Federal Rules of Civil Procedure, for an order dismissing the complaint for lack of personal jurisdiction and insufficiency of service of process. In this action, Arcata Graphics Corporation [Arcata] sues Murrays for the sum of $27,043.23 for the manufacture of catalogs which were delivered to Murrays under a contract. Arcata is a New York corporation engaged in the printing business, with its principal office in Depew, New York. Murrays is a Delaware corporation with principal offices in Peoria, Illinois, engaged in the sale of merchandise through catalogs showing its products. Murrays is a member of Merchandisers Association, Inc. [MAI], which is an association of businesses similar to Murrays gathered together to effect savings through group purchasing by its members.

On June 3, 1973 Arcata and MAI entered into a contract which provided that Murrays and other members of MAI could order catalogs from Arcata under certain terms and conditions. The contract required MAI and the members of MAI similar to Murrays to furnish transparencies, film, art work, proofs, card inserts and an eight-page index order form for the catalogs. The contract provided for delivery F.O.B. Arcata's dock, Depew, New York. The payment and orders section of the contract provided:

> The quantity of catalogs ordered by you pursuant to this agreement shall be subject to purchase orders issued by the following companies in the following quantities, directly to us, as we understand that you are acting as agent for said companies and that the total cost per catalog to each of the following named companies is to be approximately the same to each.

Four companies were named, including Peoria Suppliers, Inc., now defendant Murrays, with a quantity of 100,000 catalogs. The contract was prepared and executed by Arcata in Depew, New York, and by MAI in Chicago. On or about June 11, 1973 Murrays ordered 100,000 catalogs pursuant to the contract between Arcata and MAI for the price of $54,086.47. Following this, representatives of MAI made several trips to the Arcata plant in Depew in order to provide material and check on the work being performed by Arcata. Sam Brier, General Manager of MAI, was at Arcata on June 26, 1973, on July 1, 1973, on August 15, 1973 and on August 28 and 29, 1973 to provide materials, to review the work done and, during the week of August 20, 1973, Robert Wales, Production Manager of MAI, delivered film to Arcata on behalf of Murrays and the other members of the MAI. On August 16, 1973 the Redson Rice Corporation, in behalf of Murrays, shipped order blanks and reply cards to Arcata from Illinois. After the printing was completed, the plaintiff shipped 100,000 catalogs to the defendant. Only part payment was made and Arcata is now suing for the unpaid balance of $27,-043.23. The defendant Murrays does not have a certificate of authority to do business within the State of New York. It has no offices, bank accounts, mailing addresses, or any business facility within New York State. It does not have any agents or sales distributors. During the course of the work none of defendant's officers or agents came to Arcata and assisted in the preparation of the catalogs.

It is defendant's position that it has no contacts with the State of New York that could confer upon this court jurisdiction. Therefore, the service of process which was made in Peoria, Illinois is insufficient to confer personal jurisdiction. Plaintiff contends that MAI, in acting as agent for the defendant Murrays, carried on activities in New York State which were sufficient to confer jurisdiction upon its principal and, therefore, that the service upon Murrays in Illinois was sufficient to give jurisdiction here under the New York long arm statute, Section 302 of the Civil Practice Law and Rules of the State of New York.

In this diversity case, the questions of whether or not the foreign corporation is subject to service of process, and whether this court has jurisdiction over the foreign corporation are to be determined by the laws of New York State. Arrowsmith v. United Press International, 320 F.2d 219 (2d Cir. 1963); Gelfand v. Tanner Motor Tours, Ltd., 385 F.2d 116 (2d Cir. 1967). Furthermore, plaintiff has the burden of proving by a preponderance of the evidence that this court has personal jurisdiction over the defendant. Leasco Data Processing Equipment Corp. v. Maxwell, 319 F.Supp. 1256, 1260 (S.D. N.Y.1970); Beja v. Jahangiri, 453 F.2d 959 (2d Cir. 1972).

In applying New York law, the key question is whether the defendant, Murrays, "transact[ed] any business within that state" within the meaning of New York State's Civil Practice Law and Rules, Section 302(a)(1). In defining the above quoted phrase, the New York Court of Appeals has encountered considerable difficulty. In the 4–3 decision of McKee Electric Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967), the Court of Appeals held that the foreign corporation's contacts with the State of New York were not sufficient for New York courts to sustain jurisdiction. The defendant, Rauland-Borg, was a foreign corporation organized under the laws of the State of Illinois. Its only contacts with New York were that it made about 5% of its total sales to distributors in New York, that in 1964 it had sent the manager of its sound products division to New York for a brief two-hour meeting and, on a few other occasions, representatives of the manager had visited distributors. In holding these contacts to be less than minimal, indeed infinitesimal, the Court of Appeals stated that the overriding criterion, as established by Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), was that there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws, . . . ."

Judge Burke disagreed in a strong dissent in which he was joined by Chief Judge Fuld and Judge Keating. He argued that the facts in that case met the constitutional and procedural standards set forth in Hanson v. Denckla, *supra,* and that it was close enough to Longines-Wittnauer Watch Co. v. Barnes & Reinecke, 15 N.Y.2d 443, 261 N.Y.S. 2d 8, 209 N.E.2d 68 (1965), for jurisdiction to be maintained. In *Longines,* a unanimous Court of Appeals found that:

> The activities in which the appellant engaged in this State were assuredly adequate to meet the liberal statutory criterion. They comprised substantial preliminary negotiations through high-level personnel during a period of some two months; the actual execution of a supplementary contract; the shipment for use here, subject to acceptance following delivery, of two specially designed machines, priced at the not inconsiderable sum of $118,-000; and the rendition of services over a period of some three months by two of the appellant's top engineers in supervising the installation and testing of the complex machines.

> We need not determine whether any one of the foregoing activities would in and of itself, suffice to meet the statutory standard; in combination they more than meet that standard.

261 N.Y.S.2d at 19, 209 N.E.2d at 75. Judge Burke also said that *Longines* was not meant to define the minimum contacts required to be shown for a finding of jurisdiction and that, after *Longines,* such a finding could still be made upon fewer contacts within the State of New York than those found in *Longines.*

The case of Parke-Bernet Galleries, Inc. v. Franklyn, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970), presented a situation where there were fewer contacts. In that case, the New

York Court of Appeals dealt with a non-resident defendant's participation in an auction in New York State by phoning in his bids from out of state to an employee of the auctioneer. The defendant bid successfully on two paintings but later reneged on the contract. In holding the defendant subject to New York jurisdiction by virtue of Section 302(a) (1), a unanimous court said that the defendant's interjection of himself into the auction by means of the telephone was sufficient contact with the State of New York. Because the employee of the auctioneer had acted for the defendant by taking his bids over the telephone, even if the defendant's interjection of himself into the auction by means of the telephone was not enough for jurisdiction, the physical activity of the plaintiff's employee who acted on behalf of the defendant would be.

■ From the *Parke-Bernet* decision, it is reasonable to conclude that where a non-resident acts within New York State and purposefully avails himself of the benefits and protections of New York law, then those acts are sufficient to bring the non-resident under the jurisdiction of New York State. In addition, when a non-resident's representative acts on his behalf within the State of New York, the acts of the representative will be imputed to the non-resident and will establish a basis for New York to assert jurisdiction over the non-resident.

> . . . when the action is between a third party who dealt with a representative of the non-domiciliary in this state, the activities of that representative will be imputed to the non-domiciliary when he requested the performance of those acts in New York and those acts benefit him, and this is true without regard to whether the representative is an agent or an independent contractor.

McLaughlin, Practice Commentaries, 7B CPLR § 302 (McKinney's Supp.1974) at 10.

■ Under the circumstances of this case, the defendant Murrays by itself did not have sufficient contacts with New York to sustain a finding of jurisdiction. However, the acts of MAI in representing Murrays in New York must be attributed to Murrays. It is not necessary that there was a formal agency relationship between Murrays and MAI. It is enough if MAI acted at the request of and for the business purposes of Murrays. Parke-Bernet Galleries, Inc. v. Franklyn, *supra*; Galgay v. Bulletin Company, Inc., 504 F.2d 1062 (2d Cir. 1974). Murrays' consent to MAI's representation is not specifically stated in the record, but it is apparent from Murrays' purchase order sent to Arcata because it was sent "per contract between Arcata Graphics Corporation and Merchandisers Association, Inc. ' . . . ." Furthermore, in MAI's contract with Arcata, reference is made to the fact that MAI was acting as Murrays' agent. Thus, MAI had represented Murrays in its dealings with Arcata Corporation at their request and for business purposes.

As stated before, once such a relationship has been found to exist, all that need be determined is whether MAI's contacts within New York are enough to amount to the transaction of business. The court finds that in the totality of the circumstances present in this case, MAI's contract with Arcata and its activities in connection with Arcata establish that MAI transacted business in the State of New York. *Longines, supra; Parke-Bernet, supra; see also* Liquid Carriers Corp. v. American Mar. Corp., 375 F.2d 951 (2d Cir. 1967). The defendant's motion to dismiss for lack of jurisdiction is therefore denied.

So ordered.