**LEHIGH VALLEY INDUSTRIES, INC., and Lehigh Colonial Corporation, Plaintiffs-Appellants,**

**v.**

**Norman BIRENBAUM, Defendant-Appellee,**

**and**

**David Birenbaum et al., Defendants.**

**No. 367, Docket 75–7301.**

United States Court of Appeals, Second Circuit.

Argued Oct. 31, 1975.

Decided Nov. 28, 1975.

Gary J. Greenberg, New York City. (Stroock & Stroock & Lavan, New York City, Leonard M. Wasserman, New York City, of counsel), for plaintiffs-appellants.

Bartlett H. McGuire, New York City (Davis, Polk & Wardwell, Dale L. Matschullat, Henry H. Korn, New York City, of counsel), for defendant-appellee.

Before MULLIGAN, OAKES and MESKILL, Circuit Judges.

MULLIGAN, Circuit Judge:

This diversity action was commenced in the United States District Court, Southern District of New York, by plaintiffs Lehigh Valley Industries, Inc. (Lehigh) and its subsidiary Lehigh Colonial Corporation (Colonial), both Delaware corporations with principal places of business in New York. The plaintiff corporations are successors in interest to

Colonial Shoe Ornament, Inc. (Ornament), a Massachusetts corporation since dissolved. The defendants are David Birenbaum (David), his brother Norman Birenbaum (Norman) and two foreign (Spanish) corporations, Lydia, S. A. (Lydia) and International David, S. A. (International). The defendant Norman, a Massachusetts resident, was served in Massachusetts on February 15, 1974; on May 6, 1974 he moved to dismiss the complaint pursuant to Rule 12(b)(2) for lack of personal jurisdiction. By a memorandum and order dated January 29, 1975 District Judge Charles E. Stewart, Jr. granted Norman's motion to dismiss; that opinion is reported in 389 F.Supp. 798 (S.D.N.Y.1975). By order dated May 2, 1975 Judge Stewart made his decision and order a final order permitting this appeal pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. The order is hereby affirmed.

## I  *Facts*

The complaint alleged that Norman and David were the principal owners of seven Massachusetts corporations which were engaged in various aspects of the shoe business. In 1968 they sold their stock in these corporations to Lehigh through Colonial, its wholly owned subsidiary. The terms of the agreement are set forth in an instrument entitled "Reorganization Agreement," dated July 19, 1968. As part of the deal David and Norman were retained as chief operating officers of Ornament and separate contracts of employment were executed on October 18, 1968. Norman signed his contract in Massachusetts. The complaint alleges *inter alia* that Norman breached his employment contract by failing to devote his full time, skill and attention to the affairs of Ornament; that Norman diverted business opportunities of Ornament to his own use; that Norman failed to bring to the attention of plaintiffs' or Ornament's directors the egregious conduct of David; that he conspired with David to destroy the business of Ornament; and that he induced Ornament to abandon its leather stripping line of business and then established his own business, Louran Corporation (Louran), which took over former customers of Ornament.

It is not disputed that Norman is not now transacting business in New York and does not reside here. He has no real or personal property in New York. Norman's employment at Ornament was in Haverhill, Massachusetts which was the sole place of business of that now-defunct corporation. The question of in personam jurisdiction of New York is governed by the New York "long arm" statute, N.Y.C.P.L.R. § 302 (CPLR).[1] The sections depended upon for jurisdiction for each of the claims made are set forth in the margin.[2]

1. Section 302 is made applicable here by Fed. R.Civ.P. 4(e). The relevant provisions of the New York statute are as follows:

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary or his executor or administrator, who in person or through an agent:

1. transacts any business within the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. . . .

2. Norman is a defendant on the First, Third, Sixth, Seventh and Eighth Claims for Relief set forth in the amended complaint. Jurisdiction is alleged to be as follows:

| Claim | Subject | Basis of Jurisdiction |
|---|---|---|
| First | Conspiracy | § 302(a)(3)(ii) |
| Third | Breach of Employment Contract | § 302(a)(1) |
| Sixth | Breach of Fiduciary Duty | §§ 302(a)(1) and 302(a)(3)(ii) |
| Seventh | Conspiracy | § 302(a)(3)(ii) |
| Eighth | Appropriation of Business Opportunity | §§ 302(a)(1), 302(a)(2) and 302(a)(3)(ii) |

## II  Section 302(a)(1)—Transaction of business in New York

The plaintiffs urge that three of their claims arise out of the transaction of business within the State of New York. These claims are for breach of the employment contract, breach of fiduciary duty and misappropriation of a business opportunity (Claims Third, Sixth and Eighth). The transaction of business relied upon was David's presence in New York as Norman's agent to negotiate the contract of employment which Norman executed in Massachusetts and which was to be performed in that state. The court below found that even assuming the agency,[3] this activity did not constitute the transaction of business sufficient to meet the statutory test. We agree.

Appellants urge that David was present in New York City at the offices of Lehigh over a substantial but unspecified period of time to negotiate the sale of Ornament to Lehigh. The result was the execution of the Reorganization Agreement of July 19, 1968, a complicated transaction by which all of Ornament's shares were acquired by Colonial, Lehigh's wholly owned subsidiary. It is not claimed that David negotiated this transaction as Norman's agent. It is not even alleged that this agreement was breached. In fact, a dispute arose among the parties concerning its registration provisions and David and Norman brought an action in the United States District Court for the District of Massachusetts seeking damages for breach of the Reorganization Agreement. That litigation was terminated by a Settlement Agreement entered into on March 6, 1972. It is alleged that Norman was present in New York on several occasions to participate in the negotiations leading to the settlement. However, the Settlement Agreement specifically provided:

[I]t is hereby mutually covenanted and agreed by and between Lehigh Valley, Lehigh Colonial, and the Colonial Companies (together called the "corporations") and the Stockholders, for themselves and their respective heirs, successors and assigns that the corporations do hereby release and discharge the Stockholders and that the Stockholders each do hereby release and discharge the corporations, of and from any and all claims, liabilities or rights of action of any nature whatsoever arising out of events prior to the date hereof [March 6, 1972], whether or not now known, suspected or claimed which any of the corporations now has or ever has had against any of the Stockholders, or which any of the Stockholders now has or ever has had against any of the corporations.

Inasmuch as Norman and David were released from any and all liabilities or rights of action of any nature whatsoever rising out of events prior to March 6, 1972, it is difficult to see how the appellants can predicate jurisdiction in New York on any activity prior to that date. At least they recognize that the negotiation of the Reorganization Agreement can provide no basis for such presence. Appellants therefore have been compelled to rely upon David's presence allegedly as Norman's agent to negotiate the employment contract which survived the Settlement Agreement and which is the basis for the breach of contract and

---

**3.** In his brief on appeal, appellee argues that New York requires a traditional agency relationship for attribution of the acts of an instate agent to an out-of-state principal. *Marsh v. Kitchen*, 480 F.2d 1270 (2d Cir. 1973). We note that in *Marsh* we relied upon Dean McLaughlin's original Practice Commentary to CPLR 302 (McKinney 1972). Id. at 1273. However, in view of subsequent cases, Dean McLaughlin has revised his discussion of that section. See McLaughlin, Practice Commentaries to CPLR 302, at 13, 18 (McKinney Supp. 1975–1976). This court has subsequently recognized that "a formal agency relationship is not necessary to impute activity against the defendant where he is being sued by a third party." *Galgay v. Bulletin Co.*, 504 F.2d 1062, 1065 (2d Cir. 1974). We need not discuss the merits of the agency claim here since even assuming its validity, we find the alleged agent's activity insufficient to constitute the transaction of business.

the breach of fiduciary duties claims here made.

■ We note that Norman's affidavit categorically denies that David acted as his agent. But even assuming arguendo that he did, the thesis does not result in the transaction of business in the State of New York for section 302 purposes. The mere fact that Norman executed the contract in Massachusetts is not necessarily fatal to appellant's claim, *Galgay v. Bulletin Co., supra,* 504 F.2d at 1064. The fact that the contract was to be performed in Massachusetts by Norman is of greater significance (see *McLaughlin, supra,* at 77 (McKinney 1972)), but would not preclude a finding of meaningful presence in New York if there were substantial negotiations in that state leading to its execution. *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 457, 261 N.Y. S.2d 8, 19, 209 N.E.2d 68, 75–76, cert. denied, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965); *Liquid Carriers Corp. v. American Marine Corp.,* 375 F.2d 951, 956 (2d Cir. 1967).

■ The record before us establishes that the New York-based negotiation of the employment contract could not possibly have been substantial. Aside from the conclusory allegations of the complaint, the only affidavit submitted by appellants in opposition to the motion to dismiss for lack of jurisdiction was that of the Lehigh controller, James W. Tardiff, which alleges that:

> After the execution in July, 1968 of the contract between Lehigh and the Birenbaums to purchase Ornament and six other corporations . . . David Birenbaum . . . negotiated extensively with Lehigh in anticipa-

tion of entering into the employ of Ornament as its chief operating officer. . . . In addition to negotiating with respect to his own employment with Ornament, David also negotiated a separate employment agreement for his brother Norman Birenbaum. Norman did not participate in the negotiations, but his brother David negotiated with Lehigh on the terms and conditions of an employment contract for Norman.

Aside from its lack of specificity, the affidavit is not supported by the record. The Reorganization Agreement which had been consummated on July 19, 1968 had already provided (¶ 14) that David and Norman enter into employment contracts at annual salaries of $60,000 for a term of five years. Moreover the agreement further provided that the employment contracts would be in the form annexed thereto as Appendix H. It is inconceivable what material terms David could possibly have further negotiated after July 19, 1968. The salary, term of office and the very form of the contracts had already been fixed. From the record, all that appears to have been added are the names and addresses of the employees and employer. Those contracts, for reasons undisclosed, were not executed until October 18, 1968. What transpired in the interim is not suggested by the record but it could hardly have been the quantum of negotiation which would satisfy section 302(a)(1).[4]

Appellants inconsistently argue that the employment contract, which they have sought to distinguish from the Reorganization Agreement, was in any event part and parcel of that agreement for jurisdictional purposes and that their

---

4. See *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., supra,* where substantial preliminary negotiations concerning the sale of specially designed machinery were conducted by high-level personnel in New York during a period of some two months. In addition, the machines were shipped to New York for use here, and two of the nonresident's top engineers supervised their installation and testing over a period of some three months. In *Liquid Carriers Corp. v. American Marine Corp., su-*

*pra,* the vice president of the Louisiana defendant made three separate trips to New York during a period of two months for preliminary negotiations over the terms of a contract involving the complex technical problems associated with the construction of a chemical-carrying barge. These cases are readily distinguishable from the instant appeal where the negotiations relied upon took place after the terms of the contracts had already been fixed.

cause of action may arise from the related underlying agreement, *Security National Bank v. Republic National Life Insurance Co.*, 364 F.Supp. 585 (S.D.N.Y. 1973).[5] The flaws in this argument are palpable. The position of the appellants in both the complaint and the Tardiff affidavit is that David was Norman's agent only to negotiate the employment contract after July, 1968. It is not asserted that David was his agent to negotiate the Reorganization Agreement. Moreover, the Settlement Agreement, as we have pointed out, completely erased any liabilities of either David or Norman arising out of events prior to March 6, 1972.

■ Finally, appellants argue that Norman's presence in New York to negotiate the Settlement Agreement constitutes a transaction of business within the long arm statute. Again, no breach of this agreement is claimed by the appellants. The employment contract was not altered or amended by the March 6, 1972 settlement. The agreement specifically provided:

> The foregoing release shall neither limit nor impair the rights of the parties under the employment agreements between Colonial Shoe Ornament, Inc. and Norman Birenbaum and David Birenbaum, dated October 18, 1968 accruing from and after this date [March 6, 1972].

The Settlement Agreement only emphasized that the employment contracts were separate and distinct from the legal controversies which had created the litigation and therefore can provide no separate basis for jurisdiction over the alleged breach of those pre-existing contracts. We conclude that there was no meaningful activity in New York to support jurisdiction for the claimed breach of contract or of the fiduciary responsibilities arising thereunder.

### III Section 302(a)(2)—Commission of a Tortious Act within the State

■ In their Eighth Claim the appellants maintain that both David and Norman represented to Lehigh that Ornament's leather stripping business was unprofitable and that it was in Ornament's best interests to abandon it; that Lehigh thereafter decided to discontinue the business and David and Norman later established their own enterprise in this field. This is alleged to constitute tortious activity, i. e., the wrongful appropriation of a business opportunity rightfully belonging to Ornament. The issue before us is not whether plaintiffs might succeed on the merits of this claim but whether or not the tort occurred in New York. It is basic that the burden of proving jurisdiction is upon the party who asserts it and that he must show by the complaint and supporting affidavits the essential requirements of the jurisdictional statute, *Lamarr v. Klein,* 35 A.D.2d 248, 250, 315 N.Y.S.2d 695, 697 (1st Dep't 1970), aff'd mem., 30 N.Y.2d 757, 333 N.Y.S.2d 421, 284 N.E.2d 576 (1972); *Saratoga Harness Racing Association, Inc. v. Moss,* 26 A.D.2d 486, 490, 275 N.Y.S.2d 888, 892 (3d Dep't 1966), aff'd mem., 20 N.Y.2d 733, 283 N.Y.S.2d 55, 229 N.E.2d 620 (1967).

■ Aside from the conclusory language of the complaint, the Tardiff affidavit, while stating that Norman visited New York four times between March, 1972 and December, 1972, cites only one occasion when Norman was present and the leather stripping business was discussed—the Christmas Party for Lehigh executives in December, 1972. Norman's affidavit also admits annual visits to shoe shows. It is of course conceded that if Norman's presence in New York

---

5. Jurisdiction over a Texas defendant was sustained in that case in an action by a national bank with principal offices in New York for breach of a contract to purchase a note. The court found worthy of mention defendant's negotiation and consummation of a similar and related contract in New York. Of principal significance in that case, however, was the fact that the execution of the contract in issue, as well as the negotiations preliminary thereto, took place in New York.

was solely in his capacity as an Ornament officer, there is no basis to find personal jurisdiction. *Weller v. Cromwell Oil Co.,* 504 F.2d 927 (6th Cir. 1974); *Path Instruments International Corp. v. Asahi Optical Co.,* 312 F.Supp. 805 (S.D.N.Y.1970); *Schenin v. Micro Copper Corp.,* 272 F.Supp. 523 (S.D.N.Y.1967); *Yardis Corp. v. Cirami,* 76 Misc.2d 793, 351 N.Y.S.2d 586 (Sup.Ct.1974). Norman's affidavit urges that at all times he acted solely as an officer and in the interests of Ornament.

■ It becomes crucial therefore to ascertain from the Tardiff affidavit what specific activity took place at the Christmas Party meeting. The affidavit states that Norman participated in the discussion of the discontinuance of certain footwear operations including the leather stripping business. What Norman's contribution was, if any, to the discussion or the decision of discontinuance made thereafter is not stated. There is no claim that Ornament was not in fact losing money in the venture or even that Norman urged its discontinuance. There is no specification of any particular misrepresentation. There is in fact nothing to show that the decision made was not in the best interests of Ornament. Since Lehigh officials were present at the meeting, the failure now to allege any facts establishing Norman's disloyalty to Ornament is significant. The Tardiff affidavit further alleges that in July 1973 Norman entered into the leather stripping business in Massachusetts and, on information and belief, that Norman must have engaged in that enterprise before his contract with Ornament terminated on June 29, 1973. In contrast, Norman's affidavit states that this business (Louran, a Massachusetts corporation) was commenced after the termination of his employment contract. We see no genuine issue of fact presented here with respect to the jurisdictional issue before us since this aspect of Norman's alleged tortious conduct occurred in Massachusetts and not New York. The allegation of his participation in the Christmas Party discussion is totally in-

sufficient to create tortious activity in New York. It was clearly within the competence of appellants to raise specific issues of fact as to what transpired but we are told nothing.

Appellants also urge that David and Norman sent false and misleading information from Massachusetts to Lehigh in New York for the purpose of destroying Ornament's business. They rely upon *Polish v. Threshold Technology Inc.,* 72 Misc.2d 610, 340 N.Y.S.2d 354 (Sup.Ct. 1972) for the proposition that where a defendant knowingly sends into the state a false statement, intended that it should be relied upon to the injury of a resident of that state, he has for the purposes of section 302(a)(2) jurisdiction acted within New York. Assuming that this is a correct statement of New York law, but cf. *Kramer v. Vogl,* 17 N.Y.2d 27, 267 N.Y.S.2d 900, 215 N.E.2d 159 (1966), it would provide a basis for jurisdiction, but again the allegations of the complaint are not supported by the Tardiff affidavit which cites David as the author of the false messages. Appellant urges however that Norman was a co-conspirator of David's and therefore is bound by his act. But the only factual basis for the conspiracy alleged in the complaint is that Norman was David's brother and business associate. Appellant urges in turn that Judge Stewart improperly denied discovery which could have supported a prima facie case of conspiracy.

■ We agree that discovery may be appropriate when a defendant moves to dismiss for lack of jurisdiction. *Agrashell, Inc. v. Bernard Sirotta Co.,* 344 F.2d 583 (2d Cir. 1965). However, as this court has indicated, "the discovery rules vest broad discretion in the trial court which should not be overruled without a showing of abuse." *H. L. Moore Drug Exchange, Inc. v. Smith, Kline & French Laboratories,* 384 F.2d 97 (2d Cir. 1967). But cf. *Investment Properties International, Ltd. v. IOS, Ltd.,* 459 F.2d 705 (2d Cir. 1972). The New York law seems to be clear that the bland assertion of conspiracy or agency is insufficient to establish jurisdiction for

the purposes of section 302(a)(2). *La-marr v. Klein, supra,* 35 A.D.2d 250–51, 315 N.Y.S.2d at 697–98. There are no allegations of specific facts which would connect Norman with any New York activity. *Socialist Workers Party v. Attorney General,* 375 F.Supp. 318, 321–22 (S.D.N.Y.1974).[6]

We conclude that there is a threshold failure here to establish any basis for finding that Norman committed any tortious activity in New York and that there was no abuse of discretion below in denying discovery.

## IV   *Section 302(a)(3)—Tortious activity outside New York*

■ Appellant finally urges that Norman committed tortious activity in Massachusetts which resulted in injury in New York and that therefore jurisdiction can properly be based on section 302(a)(3). As our prior discussion indicates, whatever tortious conduct has been alleged was almost necessarily committed in Massachusetts where both Ornament and the Birenbaums were based. The effort to dress Norman in David's clothing in New York was wholly unsuccessful. However, appellants are again defeated by the statute and the cases which have construed it. Section 302(a)(3) makes an initial requirement that the tortious activity outside New York result in injury to "person or property within the state." This court in construing the section has squarely held that the injury in New York must be direct and not remote or consequential. The appellants claim that the alleged destruction by Norman of Ornament's business resulted in a loss of profits to Le-

high's stockholders. We have held that section 302(a)(3) is not satisfied by remote or consequential injuries such as lost commercial profits which occur in New York only because the plaintiff is domiciled or doing business here. *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.,* 439 F.2d 428, 433 (2d Cir. 1971); *Friedr. Zoellner (New York) Corp. v. Tex Metals Co.,* 396 F.2d 300, 303 (2d Cir. 1968). The direct injury here is of course to Ornament, a Massachusetts corporation not doing business in New York. Appellants seek to pierce the corporate veils of both Ornament and Colonial and claim loss of profits to the Lehigh stockholders. There is no reason given to pierce the corporate veils here, except that Ornament was solely owned by Colonial which in turn was solely owned by Lehigh, and all had common management. It is clear that these facts alone are not sufficient under New York law. *Walkovszky v. Carlton,* 18 N.Y.2d 414, 276 N.Y.S.2d 585, 223 N.E.2d 6 (1966); *Bartle v. Home Owners Cooperative, Inc.,* 309 N.Y. 103, 127 N.E.2d 832 (1955); *Berkey v. Third Avenue Railway Co.,* 244 N.Y. 84, 155 N.E. 58 (1926). It is further the fact that the corporate fictions now sought to be ignored were created by Lehigh and not the Birenbaums. As the purchaser of Ornament, Lehigh permitted the continuing existence of Ornament and made the purchase of its stock through Colonial. The Birenbaums are not accused of using the corporate entity to accomplish some fraudulent purpose. The appellants here are in the anomalous position of seeking to pierce the very corporate entities they have created. "The corporate veil is drawn aside on behalf of

**6.** In antitrust cases it is well established that the *mere presence* of one co-conspirator within the jurisdiction does not render alleged co-conspirators outside the jurisdiction amenable to process. *Bertha Building Corp. v. National Theatres Corp.,* 248 F.2d 833 (2d Cir. 1957), cert. denied, 356 U.S. 936 (1958). Similarly where there is a claim of a conspiracy to violate section 10(b) of the Securities Exchange Act, as Judge Friendly stated in *Leasco Data Processing Equipment Corp. v. Maxwell,* 468

F.2d 1326, 1343 (2d Cir. 1972), "To be sure, the rule in this circuit is that the mere presence of one conspirator . . . does not confer personal jurisdiction over another alleged conspirator." In this case of course we must be guided by New York's interpretation of section 302. For a discussion of the jurisdictional implications of a conspiracy allegation see *McLaughlin, supra,* at 13–14 (McKinney Supp.1975–1976).

those who have been defrauded through use of this legal form, not for those who have made use of it." *Rashap v. Brownell,* 229 F.2d 193, 195 (2d Cir. 1956). See also *Rashap v. Brownell,* 250 F.2d 794, 795 (2d Cir. 1957); *Sun-Herald Corp. v. Duggan,* 160 F.2d 475, 478 (2d Cir. 1947). In view of these factors we see no abuse of discretion in the denial of discovery and no jurisdiction under section 302(a)(3).

In sum, we find that appellants have failed to establish that Norman transacted business in New York or committed a tortious act in or outside the state which would give the district court personal jurisdiction over him under the cited provisions of section 302.

The order below is therefore affirmed.