**LOUIS MARX & CO., INC., Plaintiff,**

v.

**FUJI SEIKO CO., LTD., Fukunaga & Co., Ltd. and Manji Fukunaga, Defendants.**

**No. 77 Civil 6154.**

United States District Court, S. D. New York.

May 30, 1978.

See also, D.C., 453 F.Supp. 392.

Blum, Moscovitz, Friedman & Kaplan, New York City, for plaintiff; Harold I. Kaplan, James K. Silberman, Michael I. Wolfson, New York City, of counsel.

Hopgood, Calimafde, Kalil, Blaustein & Lieberman, New York City, for defendants; John M. Calimafde, Francis J. Murphy, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Louis Marx & Co. ("Marx"), a Delaware corporation with its principal place of business in Connecticut, is a toy manufacturer and distributor. Alleging unfair competition, breach of contract, conversion and conspiracy to interfere with advantageous business relationships, Marx brings suit against: (1) the former manufacturer of its juvenile typewriter line, Fuji Seiko Co., Ltd. ("Fuji"), a Japanese corporation with its principal place of business in Tokyo; (2) Fukunaga & Co., Ltd., another Japanese corporation; and (3) Manji Fukunaga, a Japanese citizen and the principal officer and managing director of the second company. The issue now before the Court is the defendants' motion to dismiss for lack of personal jurisdiction and for insufficient service of process.[1]

Prior to 1975, Marx was the sole purchaser of Fuji's juvenile typewriter product. In that year, however, after Marx's placement of orders had dropped substantially, Fukunaga and Fuji negotiated in Tokyo, Japan, the sale of juvenile typewriters to one Buddy L Corporation ("Buddy L"), another distributor of juvenile typewriters. Marx previously sued Buddy L claiming patent infringement and unfair competition, and alleging that the Buddy L typewriters were made on Marx-owned tools and dies, incorporated Marx-owned designs and in fact contained Marx parts. During the trial of that action,[2] Marx com-

---

1. Fed.R.Civ.P. 12(b)(2) & (5).

2. Simultaneously herewith the Court has filed its opinion directing dismissal on the merits of all of Marx's claims against Buddy L. *See*

menced this suit essentially charging that the acts complained of in the Buddy L suit made the defendants liable for the legal claims described above. It is undisputed that the defendants are not New York residents or corporations, are not licensed to do business in New York, maintain no offices, have no telephone listings, own no property, employ no individuals, nor do they advertise or solicit business in this state.[3] Plaintiff, however, contends that each defendant is subject to this Court's jurisdiction under New York's long arm statute and that the claims herein arise from the defendants' transaction of business or commission of a tortious act in this state.[4]

A. *Fukunaga and Fukunaga & Co.* Fukunaga & Co. is a Japanese buying agent which represents various foreign buyers in dealing with different Japanese manufacturers. There are no direct communications between a foreign purchaser and a Japanese manufacturer. Rather, purchase orders are submitted by the foreign purchaser to Fukunaga & Co., which forwards them to a Japanese manufacturer. Fukunaga & Co. then coordinates the production and handling of the goods in Japan, including production scheduling, shipping programming and currency exchange. All payments for the goods are made to the buying agent who in turn pays the manufacturer for the purchased goods. Thus, in an affidavit in opposition to this motion, a Marx employee involved in their typewriter program states that "[h]e has purchased typewriters manufactured by defendant Fuji Seiko Co., Ltd. . . . from Fukunaga and Fukunaga & Co." Indeed, Marx's purchases of Fuji products from Fukunaga and a predecessor buying agent, Kuramochi & Co., extend back over fifteen years.

Plaintiff's claim of jurisdiction over these defendants rests on Fukunaga's activities in this state during the course of four visits to New York between February 1976 and September 1977. These took place after Buddy L's president had met with Fukunaga in Tokyo, Japan, where they discussed the prospect of Fuji manufacturing toy typewriters for Buddy L. Fukunaga's first visit to the United States was to the "Toy Fair," an annual trade show. During this visit, plaintiff's representative met with Fukunaga and discussed various items, including the Marx relationship with Fuji and Fuji's sale of typewriters to Buddy L. Plaintiff's representative, who met again with Fukunaga in July 1976 in Connecticut to arrange for sales to Marx, alleges that he "believes that during this business trip to the United States, Fukunaga was in New York to further the sale and delivery of juvenile typewriters manufactured by Fuji Seiko for

---

*Louis Marx & Co. v. Buddy L Corp.,* 453 F.Supp. 392 (S.D.N.Y.1978).

**3.** Thus plaintiff does not claim jurisdiction under New York's traditional "doing business" test. *See* N.Y.C.P.L.R. § 301; *Gelfand v. Tanner Motor Tours, Ltd.,* 339 F.2d 317 (2d Cir. 1964); *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 115 N.E. 915 (1917).

**4.** N.Y.C.P.L.R. § 302(a)(1) & (2) provides:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
 1. transacts any business within the state; or
 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act . . . ..
The complaint indicates that plaintiff originally sought to claim jurisdiction pursuant to § 302(a)(3) as well. As plaintiff makes no mention of that section in opposition to this motion, that contention has apparently been abandoned. This is understandable, for under that subsection, it is necessary to show that a tortious act committed without the state caused injury within the state. Given that plaintiff is not even a New York corporation, that " 'the place where the critical events associated with the dispute took place,' " was not in New York, and it cannot be said that any of the defendants reasonably could have foreseen injury in New York simply because plaintiff did some business herein, there is no injury occurring in this state within the meaning of the statute. *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.,* 439 F.2d 428, 433 (2d Cir. 1971), *quoting Spectacular Promotions, Inc. v. Radio Station WING,* 272 F.Supp. 734, 737 (E.D.N.Y.1967); *see, e.g., Friedr. Zoellner (New York) Corp. v. Tex Metals Co.,* 396 F.2d 300, 303 (2d Cir. 1968); *Chemical Bank v. World Hockey Ass'n,* 403 F.Supp. 1374, 1379–80 (S.D.N.Y.1975).

Buddy L." In February 1977, Fukunaga was again in New York, this time for both a deposition as a witness in the Buddy L suit and, apparently, for the toy show; conversations were had with both Marx and Buddy L personnel concerning the sale and delivery of typewriters. Finally, Fukunaga was in New York in September 1977, and called plaintiff's representative in Connecticut stating that he was in New York at Buddy L's offices. Sales to Marx were discussed during that conversation.

▇▇▇ The foregoing activities within this state reflect sufficient transaction of business upon which to subject Fukunaga & Co. to this Court's jurisdiction. In determining a question of jurisdiction under this part of the long arm statute, "[t]he proper inquiry . . . is 'whether looking at "the totality of the defendant's activities within the forum", purposeful acts have been performed in New York by the foreign corporation.' "[5] Here, it is undisputed that various negotiations and arrangements between Fukunaga & Co. and Buddy L took place at these meetings. As the development of this business relationship, which resulted in substantial sales of merchandise, gives rise to some of Marx's claims, there is jurisdiction over Fukunaga & Co. Plaintiff served Fukunaga & Co. by registered mail pursuant to Federal Rules of Civil Procedure 4(i)(1)(D), which was received by it on December 29, 1977. Service upon Fukunaga, the principal officer and managing director of Fukunaga & Co., was sufficient service upon Fukunaga & Co.[6]

▇▇▇ The same facts which sustain jurisdiction over Fukunaga & Co. the corporation, however, repel any jurisdictional predicate for plaintiff's claim against Fukunaga individually. It is well established that a corporate officer acting on corporate business does not thereby become amenable to suit in his or her personal capacity in that jurisdiction;[7] the corporate veil is not thrust aside so readily. At oral argument on this motion, plaintiff's counsel could contend only that Fukunaga "might have" been acting on his own behalf during his New York visits. But no evidentiary matter was submitted to sustain this position. To the contrary, every reasonable inference points in the opposite direction. The burden of proving jurisdiction under the long arm statute is upon the party asserting it,[8] and plaintiff has failed to sustain this burden. Both from the affidavits offered in connection with this motion and the testimony and exhibits offered in the first trial, it is undisputed that all of the parties dealt with Fukunaga & Co. as the buying agent and not with Fukunaga individually. Fukunaga & Co.'s motion to dismiss is denied; Manji Fukunaga's motion is granted.

▇▇▇ *B. Fjui.* Marx and Fuji signed an agreement dated October 1, 1974, the breach of which is alleged herein. The agreement was neither negotiated nor executed in New York. All manufacturing pursuant to the contract took place at Fuji's plant in Japan; all tooling, dies and molds required for production were manufactured by or for Fuji in Japan. The typewriters were sold f.o.b. Japan and a foreign purchaser such as Marx was responsible for arranging shipment from there of the toy typewriters so purchased in Japan. As stated above, all purchase orders were issued and payments were made by Marx to Fukunaga & Co., which arranged the production scheduling and shipment of the typewriters so purchased. Upon the facts, there is no support for personal jurisdiction

---

**5.** *Sterling Nat'l Bank & Trust Co. v. Fidelity Mortgage Investors,* 510 F.2d 870, 873 (2d Cir. 1975), *quoting Galgay v. Bulletin Co.,* 504 F.2d 1062, 1064 (2d Cir. 1974), *quoting Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 457 & n.5, 261 N.Y.S.2d 8, 18, 209 N.E.2d 68, 75, *cert. denied,* 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965).

**6.** *See* Fed.R.Civ.P. 4(d)(3).

**7.** *Lehigh Valley Indus. v. Birenbaum,* 527 F.2d 87, 92–93 (2d Cir. 1975) and cases there cited.

**8.** *Id.* at 92; *Lamarr v. Klein,* 35 A.D.2d 248, 315 N.Y.S.2d 695 (1st Dep't 1970), *aff'd mem.,* 30 N.Y.2d 757, 333 N.Y.S.2d 421, 284 N.E.2d 576 (1972); *Saratoga Harness Racing Ass'n v. Moss,* 26 A.D.2d 486, 275 N.Y.S.2d 888 (3d Dep't 1966), *aff'd mem.,* 20 N.Y.2d 733, 283 N.Y.S.2d 55, 229 N.E.2d 620 (1967).

over Fuji based upon "minimum contacts" in New York State; to the contrary, they indicate Fuji had no contacts to serve as a predicate for personal jurisdiction and to satisfy the constitutional requirements of due process.

In *Kramer v. Vogl,*[9] the New York Court of Appeals unanimously affirmed the dismissal of an action under nearly identical circumstances. Plaintiff, a New York leather importing corporation, sued defendant, an Austrian leather manufacturer, for fraud in connection with the formation of a contract which had been neither negotiated nor executed in New York. All goods shipped under the contract were f.o.b. European ports. The defendants themselves carried on no sales, promotion or advertising in this country. As stated by the Court: "The issue boil[ed] down to whether the phrase 'transacts any business within the state' covers the situation of a nonresident who never comes into New York State but who sells and sends goods into the State pursuant to an order sent from within the State."[10] The Court's answer, even taking into account the "comparative liberality with which" it had construed subdivision (a) of section 302,[11] was a definitive no. When added to the fact that plaintiff here is neither incorporated nor has its principal place of business in this state, nor were its purchase orders sent from within this state, *Kramer* clearly governs here unless plaintiff can show any additional factors which compel a different determination.

 Plaintiff seeks to supply the additional factor by contending that on all of his visits to New York, Fukunaga acted not only on behalf of Fukunaga & Co., but in his corporate capacity, acted as agent for Fuji Seiko. For support, Marx relies on a clause of the contract which provides:

> The parties acknowledge that Fukunaga & Co., Ltd. of Tokyo, Japan (Bill Fukunaga) has represented Fuji in arranging the purchase by Marx of products from Fuji. Fuji agrees that all commissions, fees or other compensation due Fukunaga shall be paid solely by Fuji and Fuji agrees to hold Marx harmless from and against any claim by Fukunaga, it being understood that Fukunaga acts solely on behalf of Fuji.

Defendants counter by pointing to statements made by Marx employees during the Buddy L trial repeatedly referring to Fukunaga as "our agent" and the "buying agent." Under New York law, however, what the parties called Fukunaga matters little—the formal trappings of agency are not as important as the realities of the situation.[12]

To constitute an agent for purposes of the statute, the alleged agent must have acted in this state for the benefit of and with the knowledge and consent of the nonresident and the non-resident must exercise some element of control over the agent.[13] Here, it may be true that the net effect of Fukunaga's discussions in New York eventually would inure to Fuji's benefit. That, however, does not mean that Fukunaga's

9. 17 N.Y.2d 27, 267 N.Y.S.2d 900, 215 N.E.2d 159 (1966).

10. *Id.* at 31, 267 N.Y.S.2d at 903, 215 N.E.2d at 161.

11. *Id.* at 32, 267 N.Y.S.2d at 904, 215 N.E.2d at 161.

12. *See Galgay v. Bulletin Co.,* 504 F.2d 1062, 1065 (2d Cir. 1974); *PPS, Inc. v. Jewelry Sales Reps., Inc.,* 392 F.Supp. 375, 380 (S.D.N.Y. 1975); *Arcata Graphics Corp. v. Murrays Jewelers & Dist., Inc.,* 384 F.Supp. 469, 472 (N.D.N.Y.1974); *Traub v. Robertson-American Corp.,* 82 Misc.2d 222, 368 N.Y.S.2d 958 (Sup.Ct.Nassau County 1975); *Legros v. Irving,* 77 Misc.2d 497, 354 N.Y.S.2d 47 (Sup.Ct. N.Y. County 1973); McLaughlin Practice Commentaries on

C.P.L.R. § 302, at 25–26 (McKinney Supp. 1977).

13. *Legros v. Irving,* 77 Misc.2d 497, 354 N.Y. S.2d 47, 50 (Sup.Ct. N.Y. County 1973); *see Marsh v. Kitchen,* 480 F.2d 1270 (2d Cir. 1973); *Faim Information Assoc. v. Borchert,* 395 F.Supp. 878, 880 (S.D.N.Y.1975); *Arcata Graphics Corp. v. Murrays Jewelers & Dist., Inc.,* 384 F.Supp. 469, 472 (N.D.N.Y.1974); *DelBello v. Japanese Steak House,* 43 A.D.2d 455, 352 N.Y.S.2d 537, 540 (4th Dep't 1974); *Hodom v. Stearns,* 32 A.D.2d 234, 236, 301 N.Y.S.2d 146, 147 (4th Dep't), *appeal dismissed,* 25 N.Y.2d 722, 307 N.Y.S.2d 225, 255 N.E.2d 564 (1969).

activities in New York were undertaken with Fuji's knowledge and consent, nor that Fuji had any control over these activities.

Indeed, the evidence is to the contrary. There is no showing nor even a claim that Fuji was aware of any of the arrangements agreed upon at these New York meetings until it received a purchaser's order (be it Marx or Buddy L) from Fukunaga. Nor is there any indication that Fuji was aware of Fukunaga's four trips into this forum before the fact and that it consented to having any business done here on its behalf—indeed, there is every indication that Fuji intended, consistent with its practice, that all of the dealings between Fuji and any purchaser were to be through the purchaser's agent, Fukunaga & Co. Fukunaga's discussions and activities in New York were for the benefit and furthered the interests of Fukunaga & Co. in its capacity as buying agent for those interested in purchasing products manufactured in Japan.

More important, during his New York visits, Fukunaga does not appear to have been under the control of Fuji or anyone else. Fukunaga & Co. was an entity that functioned on its own behalf and independently of Fuji. It was the buying agent for a number of purchasers and dealt with a number of manufacturers. Hence it is understandable that Fukunaga would be present at the annual toy fair on his company's own account and not on behalf of any of the Japanese manufacturers with which he deals. As to the two other visits (one of which was in connection with a deposition in the Buddy L suit), nothing more was done in this forum than was the usual practice under the parties' relationship—orders were placed and arrangements made by and between the purchaser and its agent. Fukunaga cannot be said to have been acting with Fuji's knowledge or under its control. Under all the circumstances, the motion to dismiss for lack of jurisdiction must be granted.

Plaintiff further argues, however, that there is jurisdiction under CPLR 302(a)(2), which requires the claim to arise from a tortious act committed within the state.[14] Plaintiff alleges that Fukunaga and Fuji conspired to tortiously interfere with Marx's business relationship with Fuji. Plaintiff concedes that the basic business relationship between Fuji and Buddy L was first formulated in Japan, but argues that an act in furtherance of the conspiracy took place in New York when Fukunaga allegedly assured Buddy L's president falsely that none of Marx's parts were used in the Buddy L typewriters.

It is true that in an appropriate case, the acts of a co-conspirator may be attributed to a defendant for the purpose of obtaining personal jurisdiction over the defendant.[15] It is also true, however, that a "bland assertion" of a conspiracy does not suffice for purposes of the long arm statute.[16] There simply is no allegation of specific facts warranting even an inference

14. See note 4 supra.

15. Lehigh Valley Indus. v. Birenbaum, 527 F.2d 87, 93–94 (2d Cir. 1975); Chemical Bank v. World Hockey Ass'n, 403 F.Supp. 1374, 1379 (S.D.N.Y.1975); Ghazoul v. International Management Servs., Inc., 398 F.Supp. 307, 312 (S.D.N.Y.1975); Socialist Workers Party v. Attorney General, 375 F.Supp. 318, 321–22 (S.D. N.Y.1974); Unicon Management Corp. v. Koppers Co., 250 F.Supp. 850 (S.D.N.Y.1966); Reeves v. Phillips, 54 A.D.2d 854, 388 N.Y.S.2d 294 (1st Dep't 1976); American Broadcasting Co. v. Hernreich, 40 A.D.2d 800, 338 N.Y.S.2d 146 (1st Dep't 1972) (alternative holding); Lamarr v. Klein, 35 A.D.2d 248, 315 N.Y.S.2d 695 (1st Dep't 1970), aff'd, 30 N.Y.2d 757, 333 N.Y. S.2d 421, 284 N.E.2d 576 (1972) (per curiam); McLaughlin, Practice Commentary to C.P.L.R. § 302, at 20–21 (McKinney Supp.1977). It is noted that under the federal securities and antitrust laws, there is no jurisdiction over an alleged conspirator simply because of a co-conspirator's presence in this district. See Lehigh Valley Indus. v. Birenbaum, supra, 527 F.2d at 94 & n.6.

16. Lehigh Valley Indus. v. Birenbaum, 527 F.2d 87, 93 (2d Cir. 1975); Unicon Management Corp. v. Koppers Co., 250 F.Supp. 850, 852 (S.D.N.Y.1966); Lamarr v. Klein, 35 A.D.2d 248, 315 N.Y.S.2d 695, 698 (1st Dep't 1970), aff'd, 30 N.Y.2d 757, 333 N.Y.S.2d 421, 284 N.E.2d 576 (1972); see Chemical Bank v. World Hockey Ass'n, 403 F.Supp. 1374 (S.D.N. Y.1975); Socialist Workers Party v. Attorney General, 375 F.Supp. 318 (S.D.N.Y.1974).

that Fuji was a member of any alleged conspiracy.[17]

Moreover, even were the Court to accept plaintiff's contention that the statement to Buddy L's president was an act in furtherance of the conspiracy, the allegation of conspiracy in and of itself is not a tort under New York law.[18] The gravamen of the claim here is the tortious interference with business relations and not the conspiracy. Thus, there can be no jurisdiction under 302(a)(2) for "in common sense and reality" [19] the locus of the alleged tort, either in terms of acts committed or injury received, was not in New York.[20]

The motions of Fuji and Manji Fukunaga are granted; Fukunaga & Co.'s motion is denied.

It is so ordered.

See also, D.C., 453 F.Supp. 385.

---

17. See Lehigh Valley Indus. v. Birenbaum, 527 F.2d 87, 94 (2d Cir. 1975); Socialist Workers Party v. Attorney General, 375 F.Supp. 318, 321–22 (S.D.N.Y.1974).

18. Ghazoul v. International Management Servs., Inc., 398 F.Supp. 307, 311–12 & n.4 (S.D.N.Y.1975) and cases there cited.

19. Kramer v. Vogl, 17 N.Y.2d 27, 31, 267 N.Y. S.2d 900, 903, 215 N.E.2d 159, 161 (1966).

20. See note 4 supra.