Bertram Harnett, J.
Few jurisdictional points attract as much interest and litigation as the susceptibility to suit of an unlicensed foreign corporation in a State in which it is not licensed to do business.
Two broad principles embrace the area. The first allows suit generally against an unlicensed foreign corporation actually doing business in the State. The second deals with a loosely defined area of lesser corporate presence them doing business; but, where, nevertheless, some corporate business has been transacted in the State. This second jurisdictional facet, colorfully denominated "long-arm,” permits suits relating to the particular transaction generating the "long-arm” jurisdiction.*
The ease of formulating the involvement, however, belies its complexity. Not only are there serious definitional questions in both doing and transacting business, there are overlaps in principle. The concept of doing business includes transacting it, but a transaction may not constitute the requisite course of doing business.
A particularly interesting nuance is offered when the total New York activity of the unlicensed foreign corporation is done for it by the individual who now seeks to sue it in New York. Where jurisdiction depends wholly on the "long-arm” of CPLR 302 (subd [a], par 1), in that the foreign corporation "transacts any business within the state,” the agent perform *224 ing the transaction cannot use the statute to sue his principal. This rule is purely of judicial concoction, with no statutory compulsion. (Parke-Bernet Galleries v Franklyn, 26 NY2d 13; Haar v Armendaris Corp., 31 NY2d 1040, revg 40 AD2d 769.) However, there is neither statute, nor case, nor persuasive policy argument, barring an agent from suing his principal foreign corporation where its activities amounted to "doing business” in New York, even if he conducted all those activities. (Cf. CPLR 301.) This court holds that an agent under those circumstances may bring suit here. The appeal of resembling words from "transacting” to "doing” business must not be precedentially blinding; the reasons for the rules spell the necessary distinction in result.
All this being so, let us study Jay Traub’s activities in New York on behalf of Robertson-American Corporation (called "RA”) and that corporation’s motion here to dismiss for lack of jurisdiction (and for inconvenience of the forum).
I. The Facts.
Jay Traub is a New York resident. RA is a Pennsylvania corporation, with conceded facilities in Pennsylvania, Georgia, and Ohio. Its business is manufacture and distribution of ceramic tile and related products.
Traub apparently reached an oral understanding with RA in Pennsylvania for him to sell RA products in New York. RA’s president in Pennsylvania sent a letter dated January 18, 1973 to Traub in New York, which described their relationship while disclaiming that the letter was a contract.
The letter purports to outline the "conditions of [Traub’s] employment.” His "job responsibility [was] as a 'salesman’ in the metropolitan New York territory,” specifically New York City, Westchester, and Long Island. The company reserved the right to expand his territory further.
Traub was "expected” to handle contractor promotion and sales and distributor promotion and sales "as well as whatever architectural work is necessary to substantially expand the sale of Robertson-American products.” He had "sales responsibility for all products” sold by RA, although no sales solicited by Traub were valid until approved by RA in Pennsylvania, and all orders were filled from Pennsylvania.
The letter further directed Traub to "function as a full time and exclusive employee” of RA. It did give him permission to *225 represent two other specified manufacturers, but on the understanding that this would not substantially interfere with his working for RA. That permission was rescindable at any time.
Traub’s compensation was to be $12,000 annually, plus commissions, and he was entitled to join the RA employee insurance plans. He was told he could only sell at the prices, terms, and conditions of sale established by the company. And, he was instructed to alter his automobile liability insurance to include RA as a coinsured. Pursuant to this agreement, Traub generated substantial sales for RA, stated to approximate $500,000 in volume.
The arrangement continued until February 16, 1974 when Traub resigned. He felt he had insufficient co-operation from RA in building his sales and his commissions. He then sued RA for back commissions and the loss of potential earnings. RA has not yet answered the merits of the case — to this point, it seeks to dismiss Traub’s claim against it in New York on jurisdictional grounds.
II. Under The Long-Arm Statute, An Agent Suing A Principal Cannot Bootstrap His Own Activities To Create Jurisdiction.
The key to CPLR 302 (subd [a], par 1) is whether the unlicensed foreign or nondomiciliary corporation "transacts any business within the state.” This transaction test normally is satisfied when a nondomiciliary orders in the State and ships in the goods to fulfill those orders. (Singer v Walker, 15 NY2d 443.)
A. The Agent/Independent Contractor Distinction Under CPLR 302 (subd [a], par 1) Analyzed — Common-Law Precepts Of Agency Not Binding.
The parties argued whether Traub was an agent of RA or an independent contractors They proceeded on some theory that the actions of an agent are traced to his principal, but the actions of an independent contractor are not. As these terms arise in long-arm context, the common-law distinctions between agent and independent contractor seem to have been muddied.
Take these two cases involving independent contractors. In Glassman v Hyder (23 NY2d 354), the Court of Appeals denied *226 jurisdiction where a New York real estate broker sued for commissions claimed earned in attempting to sell, in New York, New Mexico property for New Mexican owners. The court called Glassman an "independent broker” and would not attribute his activities to the New Mexican defendants. It found that the New Mexican owner had transacted no business in New York (p 362). In Kramer v Vogl (17 NY2d 27), a New Yorker contracted to buy and distribute in New York leather goods made and sold to him F.O.B. Austria. When he tried to sue his Austrian supplier for breach of contract, the Court of Appeals again denied jurisdiction finding no transaction of business in New York by defendant. The court did not consider the act of an independent middleman as any extension of the manufacturer.
However, in Parke-Bernet Galleries v Franklyn (26 NY2d 13, 19, n 2, supra), the Court of Appeals referred to the plaintiffs in both Glassman and Kramer as "agents.” In Haar v Armendaris Corp. (31 NY2d 1040, supra), an attorney, classically an independent contractor, was termed an "agent” of his foreign client.
Accordingly, common-law precepts of agency are not conclusive in determining whether a particular operative is an "agent” for purposes of CPLR 302 (subd [a], par 1). Instead, it seems to turn on the question of for whose account or substantive benefit the transaction is conducted. For whose ultimate business purpose was the business transacted? If chiefly for his principal’s purpose, the principal is jurisdictionally bound by those acts. (Parke-Bernet Galleries v Franklyn, supra; Haar v Armendaris Corp., supra; Elman v Belson, 32 AD2d 422.) It is where the operative acts on his own, in pursuance of his own distinct interests and not as an extension of the foreign corporation, that his acts cannot be charged to the nondomiciliary in finding jurisdiction. (Glassman v Hyder, supra; Standard Wine & Liq. Co. v Bombay Spirits Co., 20 NY2d 13; Kramer v Vogl, supra; Millner Co. v Noudar, Lda., 24 AD2d 326.) Accordingly, under the long-arm statutes, some "independent contractors” will be deemed "agents,” causing long-arm jurisdiction, and some will be deemed "independent contractors,” not subjecting the foreign corporation for whom they deal to long-arm jurisdiction. Because of the incidents of his employment, Traub appears on the face of things to be an employee or agent for jurisdiction purposes and not an independent contractor.
*227 In any event, under CPLR 302 (subd [a], par [1]), that distinction is moot where the nondomiciliary corporate activity ostensibly conferring the jurisdiction was performed wholly by the suing performer. If the performer were truly an independent contractor and not working in extension of his supplier’s activity, there would be no CPLR 302 (subd [a], par [1]) jurisdiction right at the threshold. If he is concededly an "agent,” a recent pair of Court of Appeals cases indicates he cannot rely anyway simply on his own activities to supply jurisdiction under CPLR 302 (subd [a], par [1]).
B. An "Agent” Cannot Rely Solely On His Own Activities For CPLR 302 (subd [a], par [1]) Jurisdiction.
In Parke-Bernet Galleries v Franklyn (26 NY2d 13, supra) the court pondered a nondomiciliary defendant buyer who participated in a New York art auction by telephone. At the New York end of an interstate telephone line, his agent relayed his bids to the floor. In a suit brought by the auctioneer against the buyer, the court ruled the business transacted by the agent attributable to the principal. But, in a provocative footnote, it distinguished the case from one where the agent himself was suing the nondomiciliary (p 19, n 2): "The present case differs materially from others, relied upon by the defendant, in which we have denied jurisdiction. (See Glassman v Hyder, 23 NY2d 354; Standard Wine & Liq. Co. v Bombay Spirits Co., 20 NY2d 13; McKee Elec. Co. v Rauland-Borg Corp., 20 NY2d 377, supra; Kramer v Vogl, 17 NY2d 27.) It is sufficient to point out that in each of those cases, all of which involved agents who were suing their principals, the plaintiff was relying on his own activities within the State, and not those of the defendant, as the basis for jurisdiction. In other words, in no one of these cases had the defendant himself engaged in purposeful activity within the State nor had the cause of action arisen out of transactions with third parties conducted through an agent.”
The Court of Appeals reiterated the point in Haar v Armendaris (31 NY2d 1040, revg 40 AD2d 769, supra). There, a lawyer had conducted negotiations in New York on behalf of a nondomiciliary defendant. When the lawyer sued in New York for his fee, the Appellate Division found there was personal jurisdiction because the lawyer had been acting as defendant’s agent while negotiating in New York. The Court of Appeals tersely reversed "on the dissenting opinion at the Appellate *228 Division,” (p 1042), which rested on the above-quoted Parke-Bernet footnote. There would have been jurisdiction based on agential activity had the suit been by a third person rather than by the agent. But, where the agent was suing, purposeful activity of the principal in the State, independent of his agent, was held necessary. (40 AD2d 769, 770.)
C. Factual Question Here — Were There Purposeful Transactions In New York by RA Apart From Traub?
Defendant’s affidavit indicates that representatives of RA came into New York in connection with Traub’s sales activities. Whether these particular New York appearances amount to purposeful RA transaction activity in New York, apart from Traub’s acts, is important. (Cf. McKee Elec. Co. v Rauland-Borg Corp., 20 NY2d 377.) If there are, then there is long-arm jurisdiction for Traub here against RA on that alone, provided the found transaction was reasonably related to Traub’s cause of action. (CPLR 302, subd [a].)
Some hearing is necessary to demonstrate the underlying facts.
III. If Ra "Doing Business” In New York, Traub May Sue It Here.
A. Did The Traub Activity Constitute "Doing Business?”
This moves the inquiry to CPLR 301 which affords jurisdiction over a nondomiciliary "doing business” in New York. For if that section is found applicable, Traub can sue RA here without regard to his possible preclusion from CPLR 302 (subd [a], par [1]). The pleadings and affidavits now before the court raise the serious possibility that by virtue of the Traub arrangement, RA may have been "doing business” in New York.
Resolving a question of doing business in a State so as to base suit jurisdiction is to mass the contacts (Perkins v Benguet Min. Co., 342 US 437; International Shoe Co. v Washington, 326 US 310), and to look for a continuous and systematic course of activity. (Frummer v Hilton Hotels Int., 19 NY2d 533.)
Did RA establish a corporate presence in New York through Traub? The mere fact that orders were subject to approval from a Philadelphia office and filled from there, would not *229 vitiate the fact that Traub, a resident of New York, was an agent (and probably an employee) maintaining corporate services in New York on a regular and continuing basis. And, Traub’s activities in New York on behalf of RA were apparently extensive, generating over half a million dollars in sales in a little more than a year.
However, solicitation of business alone is insufficient to establish "doing business”; some additional activity is necessary. (Scanapico v Richmond, Fredericksburg & Potomac R. R. Co., 439 F2d 17.) While the pleadings and affidavits suggest more than simple solicitation by Traub, and are persuasive of a "doing business” status, they are not conclusive.
We are told of Traub’s responsibilities under the letter of January 18, 1973, but we do not know what he actually did. Did he follow the mandates of the letter in practice? Did he maintain an office? What did he do to handle "contractor promotion” or "whatever architectural work is necessary?” What things did he do beyond those mentioned in the letter? These are some of the factual questions that must be answered before jurisdiction under CPLR 301 can be determined.
B. There Is No Bar To Suit In New York By An Employee Or Agent Against An Unlicensed Foreign Corporation Doing Business Here By Virtue Of His Acts.
1. Unreasonableness Of Denying The Right To Sue In New York Of A New York Resident Devoting His Principal Time To A Foreign Corporation’s Business Activities Here.
It would be unreasonable to deny access to New York courts to Traub, a New York resident, if RA were doing business here.
During the period involved, Traub worked for RA, as his principal economic activity, more closely approximating the position of employee than anything else. In a 13-month period, RA carried on in New York through its residential operative a business to the tune of a half million dollars in sales. What conceivable rules of reason or justice would deny access by Traub to the New York courts, and protect a corporation doing business here, by requiring a blameless New York individual to journey out of State to enforce a contract made to be performed in New York?
*230 2. Distinction Between A Regular Pattern Of "Doing Business” And A Sporadic "Transaction.”
At the bottom line, the New York suit distinction between an agent and a third party in achieving long-arm jurisdiction has no application to foreign corporations doing business here. Agents doing the business are not precluded from suing here even if their activities constitute all the corporate activity here.
The policy bases of the situations are vastly different. Corporations doing business in New York are here. They are present in New York, like natural persons who live here. It is fair to sue them where they do business because corporations live through doing business.
On the other hand, the long-arm statutes apply to a lesser presence. They do not apply to defendants who live here. By definition, they apply only to nondomiciliaries. They are not addressed to those in a daily pattern of conducting business in New York, nor to those carrying on through agents or employees a recurring and regular skein of business activity. Yet, on balance, it has been thought fair to expose nondomiciliaries transacting business in New York (short of "doing business”) to suit, although in a limited way, to those involving the transactions done here.
There is a different balance of fairness in the two categories. The business that lives here is more responsive to suit than the business that does not. Rights and duties allocate differently between them. As stated in Elman v Belson (32 AD2d 422, 426, supra): "The final standard for jurisdiction is reasonableness — whether the defendant is unfairly burdened by the compulsion to contest a suit in a forum outside his domicile.”
The casual transactor, forced into a forum, may require greater jurisdictional safeguards than the regular doer of business who is always here. It is, after all, the agent who deals directly with the nondomiciliary; he is a New Yorker voluntarily treating with a non-New Yorker. When the agent turns around and then deals with another New Yorker on behalf of the nondomiciliary, the agent and principal convert the transaction into a New Yorker dealing with a New Yorker situation. This affords the third-party rights in fairness against the nondomiciliary who participated with him in a New York connection through an agent of its own choosing. But, as between the nondomiciliary transactor and the trans *231 acting agent, it can be argued the balance of fairness precludes the agent who picked his principal and dealt with him from out of State from imposing a casually related and perhaps burdensome or remote forum. To the "doing business” corporation, the forum is neither remote nor burdensome, and no reason exists to protect it against its agent.
Finally, a suing distinction between agent and third parties as applied to corporations doing business here would be irrational in view of the articulated New York policy to penalize foreign corporations doing business here without requisite qualification. Under section 1312 of the Business Corporation Law, a foreign corporation doing business here without a license may not bring suit in the New York courts (§ 1312, subd [a]), but may be sued here itself (§ 1312, subd [b]). Absent some conspiratorial demonstration by the New York agent or employee, a corporation offending the New York policy of qualification should not be permitted to gain at the expense of an innocent New York resident agent.
IV. The Forum Is Convenient If There Are "Transactions” Or "Doing Business Here.”
One last issue is raised on this motion: inconvenience of the forum. RA claims that even if the court could exercise jurisdiction, in the interests of justice, it should not force RA into an inconvenient judicial forum. (CPLR 327.) This contention is easily rejected.
Presumably, it would be more convenient for every party to litigate in his home State. While the present papers do not fully indicate the added burdens each would bear litigating in a foreign forum, some facts seem clear. RA’s witnesses will most likely be its Pennsylvania employees who will have to come with their books and records into New York. Traub’s witnesses will likely include his New York contacts. Should we refuse jurisdiction in favor of a Pennsylvania forum, Traub may have trouble getting these witnesses who would be beyond Pennsylvania’s jurisdictional reach, and beyond his control. In either case, the distance between New York and Philadelphia is not great.
But, the concept of inconvenient forum, a codification of the common-law doctrine of forum non conveniens, does not ask for a balance of the relative burdens to the parties in different jurisdictions. Rather, it calls for the stay or dismissal of a case that had no business in New York in the first place. Plaintiff’s *232 choice of forum should not be disturbed unless there are compelling reasons to do so. (Olympic Corp. v Societe Generale, 462 F2d 376, 378.)
"Inconvenient forum” does not provide a ticket out of town for every foreign corporation. It only provides that the court should not accept "jurisdiction of a cause having no substantial nexus with New York.” (Silver v Great Amer. Ins. Co., 29 NY2d 356, 361.) Where the New York connection is as pervasive as it would be here if RA were either transacting or doing business in New York, justice militates for, not against, retaining the case.
V. Decision On Motion Deferred Pending A Directed Factual Inquiry.
The court cannot decide the motion to dismiss based on lack of jurisdiction because (as indicated above) there must be factual inquiry as to whether RA was either: (1) transacting any business here which relates to Traub’s suit through the activity of others than Traub; or (2) "doing business” in New York. Accordingly, decision on this motion is deferred and reserved pending a factual hearing on these two questions. The hearing will be before Trial Term, Part III, in this courthouse, at 9:30 a.m. on June 9,1975.

 CPLR 302 (subd [a], par 1): "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: (1). transacts any business within the state”.