PNEUMA–FLO SYSTEMS, INC. and
Morton Weiss, Plaintiffs,

v.

UNIVERSAL MACHINERY
CORP., Defendant.

No. 78 Civ. 69–CSH.

United States District Court,
S. D. New York.

July 28, 1978.

Edmiston, Burrows, Vaccaro & Galloway, Yonkers, N. Y., for plaintiffs; Frederick Buck, Jr., Yonkers, N. Y., of counsel.

Trubin, Sillcocks, Edelman & Knapp, New York City, for defendant; Howard M. Goldstein, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

The due process era in jurisdiction, ushered in by *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and continued apace by decisions such as *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), has undoubtedly brought about a more equitable distribution of hardships arising when a local plaintiff seeks redress against a foreign defendant. This revolution, achieved through the repudiation of simple physical presence as the *sine qua non* of amenability to suit and substituting the forum court's assessment of the defendant's "contacts" with the jurisdiction, has not, alas, been accomplished without cost. The price paid for the abandonment of the hard and fast rules established by *Pennoyer v. Neff*, 95 U.S. (5 Otto) 714, 24 L.Ed. 565 (1878) has been the virtue of certainty.

The difficulty is no better illustrated than in the present diversity action, a suit by a local sales representative and its president against a California manufacturer for commissions averred to be due and owing under two contracts. Defendant seeks an order pursuant to Rule 12(b)(2), F.R.Civ.P., dismissing the action for lack of personal jurisdiction.[1] It may come as some surprise to plaintiff, and possibly even to its counsel, to be informed that the defendant on whose

---

1. Movant, in the alternative, prays for an order pursuant to 28 U.S.C. § 1404(a) transferring this action to the united States District Court for the Southern District of California, an application which is resisted by plaintiff. In light of the disposition reached with respect to the issue of personal jurisdiction and in view of plaintiff's objection, the Court intimates no view on the propriety of the request.

In declining to order the proposed transfer, the Court is cognizant of its power, despite its lack of personal jurisdiction over defendant, to issue such an order in the "interests of justice," *Corke v. Sameiet M.S. "Song of Norway"*, 572 F.2d 77 (2d Cir. 1978). However, that phrase has generally been interpreted to require a showing that a litigant would be prejudiced by the failure of the district judge to consider the transfer motion, see 572 F.2d at 80. No prejudice would result by virtue of the simple dismissal of this action, and the Court leaves it to plaintiff to decide whether to reinstitute this action in the California courts.

behalf it has labored long and hard in this state is not amenable to suit here. Having reviewed the record in this case, this is the conclusion which the Court reaches.

## I.

Defendant Universal Machinery Corporation ("Universal") exists by virtue of the laws of California, the state wherein it maintains its principal place of business.[2] It is engaged in the manufacture of "wicketers", a complex piece of industrial machinery used in the production and packaging of plastic bags and other wrapping materials. Universal is devoid of the usual indicia of presence in this forum, such as a license to conduct business in New York, the maintenance here of a local office, employees, designated agent, bank account or other property or a telephone listing.[3]

Defendant's only connection with New York exists by virtue of its relationship with plaintiff Pneuma-Flo Systems, Inc. ("Pneuma-Flo"), a wholly independent company organized under the laws of this state with its principal place of business in Yonkers, New York and having plaintiff Morton Weiss ("Weiss") as its president. It is involved in the business of selling, repairing and replacing industrial equipment such as that manufactured by Universal. In August, 1973, the parties entered into a one year sales agreement[4] whereby plaintiff acquired the exclusive right to vend defendant's products in the Eastern United States and Canada on a commission basis. In December, 1974, a second agreement[5] virtually identical to the prior contract, but having a three year duration, was entered into by the parties. It is averred that Weiss signed the earlier contract in New York,[6] although it appears that both agreements were negotiated and ultimately executed in California.[7]

Those contracts established plaintiff company as a sales representative of defendant: under the procedure contemplated by those agreements, plaintiff would solicit sales here on behalf of defendant, and forward the orders received to California from which point Universal appears to ship the equipment to either the purchaser, or its sales representative, and bill the purchaser directly. In this manner, it is averred that Pneuma-Flo serviced approximately 15 customers in New York for defendant, and generated between $40,000 and $60,000 worth of business per year.[8]

During the course of the contracts, plaintiff avers that Richard Joice, then a Vice President of Universal, made several trips to Pneuma-Flo's offices for the purpose of suggesting ways in which new customers could be found and present clients induced to enlarge their orders. Meetings with one or more customers were alleged to have been held.[9] It is further averred that in 1974, Universal's President, one Len Monaco, together with another corporate official, met with Weiss at a trade show in New York City for the purpose of discussing market conditions and trade prospects.[10]

2. Affidavit of Richard Joice Submitted in Support of the Motion, sworn to February 6, 1978 ("Joice Aff't"), ¶ 5. Defendant's sales brochure, attached as Exhibit A to the Affidavit of Morton Weiss in Opposition to the Motion, sworn to March 20, 1978 ("Weiss Aff't") portrays Universal as "the Idea People from California."

3. Joice Aff't, ¶¶ 8–10.

4. See Exhibit 2 to Joice Aff't.

5. See Exhibit 3 to Joice Aff't.

6. Weiss Aff't, ¶ 4.

7. Affidavit of Howard Goldstein Submitted in Support of the Motion, sworn to February 16, 1978 ("Goldstein Aff't"), ¶ 6; Reply Affidavit of Howard Goldstein Submitted in Support of the Motion, sworn to April 6, 1978 ("Goldstein Reply Aff't"), p. 4.

8. Weiss Aff't, ¶ 7. It is further averred that plaintiff has maintained supplies of replacement parts on consignment from Universal, but this system was replaced in August, 1973, with a strict cash on delivery method, see Reply Affidavit of Richard Joice, Submitted in Support of the Motion, sworn to April 3, 1978 ("Joice Reply Aff't"), ¶ 4.

9. Weiss Aff't, ¶ 5.

10. Weiss Aff't, ¶ 5.

Finally, plaintiff urges that Universal's presence in New York is established because its name was placed on Pneuma-Flo's office door, and because a brochure prepared by it states that "decentralized" facilities are maintained by defendant in New York for sales and repair services.[11]

Based upon the foregoing, plaintiff posits personal jurisdiction over defendant on both Civil Practice Law and Rules ("CPLR") § 301 ("doing business") and CPLR § 302(a)(1) ("transacting business"). These contentions are considered in turn.

## II.

 It must be noted preliminarily that under New York law, which governs the issues at bar, plaintiff under either CPLR §§ 301 or 302(a)(1) has the burden of establishing by a preponderance of the evidence that defendant's person is properly before the court, *Charles Abel, Ltd. v. School Pictures, Inc.*, 40 A.D.2d 944, 339 N.Y.S.2d 242 (1st Dept. 1972) (§ 301); *Lamarr v. Klein*, 35 A.D.2d 248, 315 N.Y.S.2d 695 (1st Dept. 1970) (§ 302[a][1]); *G.S.C. Assoc., Inc. v. Rogers*, 430 F.Supp. 148 (E.D. N.Y.1977). This is entirely appropriate since it is still the rule that defendants should normally be sued where they are found, *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). In this connection, although the essential facts as set forth above are not disputed,[12] this Court has resolved all ambiguities or evidentiary conflicts in favor of the party opposing the motion to dismiss. Notwithstanding the Court's construction

of the lamentably slim record before it, plaintiff has not borne its burden.

### A. Jurisdiction under CPLR § 301.

 A non-resident defendant may subject itself to the personal jurisdiction of a New York court under CPLR § 301 if it does business in this State ". . . not occasionally or casually, but with a fair measure of permanence and continuity," *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 115 N.E. 915 (1917); see also *Frummer v. Hilton Hotels Int'l., Inc.*, 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851, *remittitur amended*, 20 N.Y.2d 737, 283 N.Y.S.2d 99, 229 N.E.2d 696, *cert. den.*, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967). Normally, when such activity is undertaken here on defendant's behalf by an agent, *Frummer v. Hilton Hotels Int'l., Inc., supra*; cf. *McShan v. Omega Louis Brandt et Frere, S.A.*, 536 F.2d 516 (2d Cir. 1976), or even an independent contractor operating with the authority and for the substantial benefit of the non-resident, *Galgay v. Bulletin Co., Inc.*, 504 F.2d 1062 (2d Cir. 1974); *Gelfand v. Tanner Motor Tours, Ltd.*, 385 F.2d 116 (2d Cir. 1967), *cert. den.*, 390 U.S. 996, 88 S.Ct. 1198, 20 L.Ed.2d 95 (1968), those acts may be attributed to the non-domiciliary for the purpose of ascertaining its liability to a New York judgment *in personam*. Where, however, it is the local representative itself rather than a third party who seeks to reach the foreign defendant, the plaintiff's own efforts here on defendant's behalf may not be entered into the jurisdictional computation.

Such is the holding of *Haar v. Armendaris Corp.*, 31 N.Y.2d 1040, 342 N.Y.S.2d 70, 294 N.E.2d 855 (1973), *rev'g*, 40 A.D.2d 769,

---

**11.** The brochure described in the text is attached as *Exhibit A* to the *Weiss Aff't*. The passage alluded to by plaintiff provides as follows:

"Universal maintains decentralized facilities in Atlanta, Georgia, New York City, New York and Milwaukee, Wisconsin. The Company provides full service, sales and parts operations at these decentralized facilities. Decentralization of operation saves Univer-

sal's customers time and money, facilitates delivery, and expedites service."

**12.** Some differences are apparent, however; for example, defendant disputes that a meeting between plaintiff's president and various Universal officials took place at a trade fair in New York City in 1974, see Joice Reply Aff't, ¶ 8. Exception is taken to certain other particulars as well, none of which appear to be material to the disposition reached herein, see Joice Reply Aff't, ¶¶ 2–4.

337 N.Y.S.2d 285 (1st Dept. 1972,[13] wherein the New York Court of Appeals put its *imprimatur* upon a dissent filed in the court below, which held that an agent may not rely upon its own acts in seeking to establish long-arm jurisdiction over a non-domiciliary principal. This construction has its genesis in *dicta* found in *Parke-Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 19 n.2, 308 N.Y.S.2d 337, 341 n.2, 256 N.E.2d 506 (1972)[14] to the effect that only the independent, repeated and purposeful acts of a non-resident principal will suffice to render it liable to *in personam* jurisdiction in a lawsuit instituted by its agent. The rationale for this rule has not been thoroughly elucidated, although it does appear to rest on a reluctance, for equitable reasons, to allow local plaintiffs to gain personal juris-

diction over their foreign affiliates through their own unilateral conduct. This "bootstrap" doctrine has met with a chilly critical reception from courts[15] and commentators[16] alike; but however insupportable the rule may seem, the federal courts in this area are bound by the clear pronouncements of the forum state's highest tribunal.

In a noble effort to confine this seemingly unwarranted curtailment of state power, one New York court has declined to apply the *Haar* rule in cases in which personal jurisdiction over the non-resident defendant is predicated upon the more continuous and purposeful contacts required to find it "doing business" under CPLR § 301. In *Traub v. Robertson-American Corp.,* 82 Misc.2d 222, 368 N.Y.S.2d 958 (Sup.Ct.Nassau Cty. 1975),[17] the court refused to preclude a local

**13.** In *Haar,* an attorney instituted an action in New York seeking legal fees allegedly owed him by a Delaware corporation which had retained him to perform certain services in this State. The Appellate Division held that a non-resident, through the actions of its local agent —here, the plaintiff attorney—had transacted business within the meaning of CPLR § 302(a)(1), 40 A.D.2d at 769, 337 N.Y.S.2d at 287. Justice Capozzoli disagreed, arguing that the majority's conclusion was foreclosed by footnote two of the opinion in *Parke-Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 19 n.2, 308 N.Y.S.2d 337, 341 n.2, 256 N.E.2d 506 (1972) quoted *infra* at n.14. The Court of Appeals concurred with the dissent, and in a four line per curiam opinion reversed for the reason set forth by Justice Capozzoli.

**14.** Non-resident defendant in *Parke-Bernet Galleries, supra,* while physically located in California, participated in an auction conducted by plaintiff in New York through telephonic communication. In this manner, defendant was able to hear the proceedings and to announce his bids through a Gallery employee—later deemed to be a "borrowed servant" and thus an agent of defendant—who held a receiver. In a subsequent suit for nonpayment brought in the New York courts, personal jurisdiction over defendant was upheld. The Court of Appeals distinguished defendant's authorities, cited for the proposition that his activities were insufficient to subject him to an *in personam* judgment here, in a footnote, stating:

"It is sufficient to point out that in each of those cases, all of which involved agents who were suing their principals, the plaintiff was relying on his own activities within the State, and not those of the defendant, as the basis for jurisdiction. In other words, in no one of

these cases had the defendant himself engaged in purposeful activity within the State nor had the cause of action arisen out of transactions with third parties conducted through an agent." 26 N.Y.2d at 19 n.2, 308 N.Y.S.2d at 341–42 n.2, 256 N.E.2d at 509.

**15.** See e. g. *Merrill Lynch, Pierce, Fenner & Smith v. Lecopulos,* 553 F.2d 842, 844 (2d Cir. 1977); *Merrill Lynch, Pierce, Fenner & Smith v. Alexiou,* 397 F.Supp. 1292, 1294–95 (S.D.N.Y.1975).

**16.** Professor McLaughlin has commented:

"This is a regrettable turn in the tortuous road of CPLR 302. If the acts of a true agent may be imputed to his foreign principal when the suit is between a third party, who dealt with the agent, and the principal, there is no analytical reason why the acts of the agent cannot be similarly attributed when the suit is between the agent and the principal," *Practice Commentary,* 7B McKinney's Consol.Laws of New York § 302 (1977–1978) Supp. Pocket Part at 25–26.

**17.** Plaintiff in *Traub* was the local sales representative of a non-resident defendant, a Pennsylvania manufacturer of ceramic tile. Suit was commenced here for the payment of commissions alleged to be due and owing under a letter agreement. Justice Harnett acquiesced in the application of the *Haar* rule to CPLR § 302(a)(1), but not to CPLR § 301:

"There is a different balance of fairness in the two categories. The business that lives here is more responsive to suit than the business that does not. Rights and duties allocate differently between them. As stated in

sales agent from asserting jurisdiction over its foreign principal based only upon plaintiff's unilateral acts here. Justice Harnett contended that the limitation of the *Haar* doctrine to CPLR § 302(a)(1) was reasonable because a corporation "doing business" in New York was more likely than a casual "transacter of business" to be present here in the literal sense. This rationale is unpersuasive since it assumes its own conclusion: that is, it posits the doing of business which is, of course, the matter to be determined by the appropriate judicial criteria.

■ The New York Court of Appeals has not explicitly passed upon this contention, thereby placing the federal district court in the precarious position of having to predict not only what this State's highest court will eventually decree, but also what our own Circuit Court will foresee that determination to be.[18] Although this result is at best perceived through a glass darkly, this Court holds that the *Haar* rule will be applied to cases in which personal jurisdiction is asserted by a local representative over a foreign affiliate based upon the former's own activities within the forum pursuant to CPLR § 301. This conclusion is based on the inherent weakness of the arguments *contra,* as exemplified by *Traub, supra*; because other New York State courts, including an appellate panel, have so held, *DelBello v. Japanese Steak House, Inc.,* 43 App.Div.2d 455, 352 N.Y.S.2d 537 (4th Dept. 1974), *Ladenburg, Thalmann & Co. v. Scalleat,* 86 Misc.2d 503, 383 N.Y.S.2d 168 (Civil

Ct.N.Y.Cty.1976); and because a leading commentator on New York practice and procedure has concluded:

". . . [I]t is difficult to believe that the Court of Appeals could espouse a doctrine that imputed the acts of an agent when the non-domiciliary was 'doing business', but would not impute the acts when the non-domiciliary was 'transacting business'." McLaughlin, *Practice Commentary,* 7B McKinney's Consol. Laws of New York § 302 (1977–1978) Supp. Pocket Part at 21.

■ Furthermore, even if the *Haar* rule were held inoperative in the CPLR § 301 context, Pneuma-Flo's intra-state activities could nonetheless not be ascribed to Universal. A local representative, through its own acts, may subject its foreign affiliate to *in personam* jurisdiction in New York if it undertakes the non-resident's business here with either too much or too little authority. Thus, if the local entity is sufficiently controlled or dominated by the foreign defendant such that their relationship gives rise to a valid "inference of agency," *Noble v. Singapore Resort Motel of Miami Beach,* 21 N.Y.2d 1006, 1008, 290 N.Y.S.2d 926, 928, 238 N.E.2d 328 (1968), its behavior here will be imputed to the foreign principal, see also *Delagi v. Volkswagenwerk,* 29 N.Y.2d 426, 328 N.Y.S.2d 653, 278 N.E.2d 895 (1972); *Frummer v. Hilton Hotels Int'l Corp., supra.* So too will the defendant bear responsibility for an independent con-

*Elman v. Belson,* 32 A.D.2d 422, 426, 302 N.Y.S.2d 961, 965, 'The final standard for jurisdiction is reasonableness—whether the defendant is unfairly burdened by the compulsion to contest a suit in a forum outside his domicile' . . . To the 'doing business' corporation, the forum is neither remote nor burdensome, and no reason exists to protect it against its agent." 368 N.Y.S.2d at 967.

**18.** Since the instant question involves construction of state law, the Court is not in the enviable position my brother Conner found himself in when he declared recently that constitutional notions of due process do not compel application of the *Haar* doctrine in assessing whether a non-resident defendant's contacts with New York are sufficient to support the attachment of his property here. In *Drexel Burnham Lam-*

*bert Inc. v. D'Angelo,* 453 F.Supp. 1294 (S.D.N.Y.1978), plaintiff brokerage house claimed that non-resident defendant, a former customer, had incurred a substantial debit, on which payment was refused. *Quasi-in-rem* jurisdiction was obtained over defendant through the attachment here of two deposits he maintained with brokers. Denying a motion to dismiss for lack of jurisdiction, Judge Conner held that *Haar* did not preclude consideration of *plaintiff-agent's* own acts in the forum in weighing the sufficiency of defendant-principal's presence, since the question was one of constitutional due process rather than of state statutory construction, Opinion at 862–863, see also *Intermeat, Inc. v. American Poultry, Inc.,* 575 F.2d 1017 (2d Cir. 1978), and plaintiff had demonstrated the necessary minimum contacts.

tractor's efforts in this State if they are undertaken with sufficient authority to bind defendant, and represent so significant a portion of his business that the non-resident would have to dispatch its own employees to this State were its affairs not conducted on its behalf, *Gelfand v. Tanner Motor Tours, Ltd., supra; see also Galgay v. Bulletin Co. Inc., supra.* Pneuma-Flo's relationship with Universal falls between these two stools.

Plainly, Pneuma-Flo is not an "agent" of Universal in the legal sense of the term. That relationship is precluded by, *inter alia,* the express terms of the sales agreements, both of which state at paragraph "I":

"RELATIONSHIP OF PARTIES

1. It is expressly understood by the parties that the Sales Representative is an independent contractor and is in no way an employee of the Company, and nothing herein shall be construed as creating any such relationship between them." [19]

Moreover, it does not appear that Universal directs the manner in which Pneuma-Flo conducts its business.

On the other hand, plaintiff as an independent contractor seems to lack the authority necessary to have its activities imputed to Universal. Generally, in order to have such an ascription, it must be demonstrated that the local representative does here all that the foreign affiliate could do, were it here by its own officials, *Frummer v. Hilton Hotels Int'l, Inc., supra,* 19 N.Y.2d at 537, 281 N.Y.S.2d at 44, 227 N.E.2d 851. Translated into the manufacture-distributor context, this usually requires that the latter party must, as a minimum, have the power not only to solicit orders, but also to confirm or accept them on behalf of the former. Plaintiff makes no such representation on this point, and while the record is not entirely clear on this issue, Pneuma-Flo's mandate does appear to be limited to

the channeling of orders to California where Universal retains the right to accept them or not.[20] Additionally, there is no indication of the importance to defendant of its New York business. Consequently, even were this action being prosecuted by a third party, it is doubtful whether defendant could be held to be "doing business" in New York through the action of its sales representative.

For the reasons set forth above, the Court finds that plaintiff's own activities in this State cannot be considered in determining whether defendant is subject to personal jurisdiction in New York under CPLR § 301. Putting Pneuma-Flo's presence to one side, Universal's activities within the forum, when considered alone, are an insufficient predicate for the assertion that it was "doing business" here. At most, its own actions consist of the mere solicitation of business in this State, which has long been held an inadequate basis for personal liability, *Aquascutum of London, Inc. v. S.S. "American Champion",* 426 F.2d 205 (2d Cir. 1970), even if accompanied by occasional visits of a company official acting in a troubleshooting or promotional capacity, *Liquid Carriers Corp. v. American Marine Corp.,* 375 F.2d 951 (2d Cir. 1967); see also *Fontanetta v. American Board of Internal Medicine,* 421 F.2d 355 (2d Cir. 1970).

**B. Jurisdiction under CPLR § 302(a).**

Alternatively, Pneuma-Flo argues that Universal is susceptible to a judgment *in personam* here on the ground that defendant's officers, on several occasions, entered the State to confer with plaintiff and its customers about matters arising under the commission sales contracts. Jurisdiction is therefore postulated under the "transacting business" rationale set forth in CPLR § 302(a)(1).

---

19. Exhibits 2, 3 to Joice Aff't.

20. Paragraph I to the sales agreements, see Exhibits 2, 3 to Joice Aff't, contains the following language:

"2. The Sales Representative is not authorized and has no power to represent or bind the Company in any manner whatsoever, ex-

cept in his capacity of soliciting sales for the products and equipment of the Company, and further, neither party shall have any right whatsoever to incur any liabilities or obligations for or on behalf of the other party."

It is true that our courts have based personal jurisdiction on the existence of such periodic visits, see e. g. *Erving v. Virginia Squires Basketball Club,* 349 F.Supp. 709 (E.D.N.Y.), *aff'd,* 468 F.2d 1064 (2d Cir. 1972); *Federal Deposit Ins. Corp. v. Interbanca,* 405 F.Supp. 1118 (S.D.N.Y.1975); *National Iranian Oil Co. v. Commercial Union Ins. Co. of N. Y.,* 363 F.Supp. 129 (S.D.N.Y.1973), or even on a single such sojourn, *George Reiner & Co., Inc. v. Schwartz,* 41 N.Y.2d 648, 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977); *Milton R. Barrie Co. v. Levine,* 54 A.D.2d 642, 387 N.Y.S.2d 627 (1st Dept. 1976); see also *Sterling Nat'l Bank & Trust Co. of N. Y. v. Fidelity Mort. Investors,* 510 F.2d 870 (2d Cir. 1975).

 It is not the number of such incursions, or their duration, however, which is dispositive; rather, it is their nature and quality. Thus, in each of the cases where jurisdiction over a non-resident has been upheld due to the visits of its officials, those meetings were for purposes essential to the formation or continuance of the contract which has given rise to the litigation. For example, in *George Reiner & Co., Inc. v. Schwartz, supra,* the defendant entered New York only on a single occasion, but with the purpose of negotiating, concluding and formally executing the employment contract on which he was later sued for the excess of his drawings over his earned commissions.[21]

 Here there is no averment, nor can any intimation be drawn, that the alleged visits of defendant's officials were of comparable significance. As previously set forth, the contracts in issue were negotiated and executed in California. There is no claim that the subsequent New York meetings were essential to the ongoing relationship of the parties, and it may be worth noting that those discussions are averred to have been for the benefit of plaintiff,[22] see *Meyer v. Gas Magazines, Inc.,* 49 A.D.2d 864, 374 N.Y.S.2d 322 (1st Dept. 1975). Under these circumstances, the issue is controlled by *McKee Elec. Co. v. Rauland-Borg Corp.,* 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967), wherein the Court of Appeals rejected an attempt to predicate personal jurisdiction under CPLR § 302(a)(1) on the visit to New York of one of defendant's officers, stating:

". . . [I]t seems to us the contacts here, rather than being minimal, were so infinitesimal . . . that jurisdiction of the New York courts cannot be sustained. Otherwise, every corporation whose officers or sales personnel happen to pass the time of day with a New York customer in New York runs the risk of being subjected to the personal jurisdiction of our courts." 20 N.Y.2d at 382, 283 N.Y.S.2d at 37, 229 N.E.2d at 607.

Accord, *Bankers Commercial Corp. v. Alto, Inc.,* 30 A.D.2d 517, 289 N.Y.S.2d 993 (1st Dept. 1968); see also *Lehigh Valley Ind., Inc. v. Birenbaum,* 527 F.2d 87 (2d Cir. 1975). Consequently, Universal has not subjected itself to this Court's power by virtue of the occasional visits paid plaintiff by its various corporate officers.

**21.** *Compare, Moser v. Boatman,* 392 F.Supp. 270 (E.D.N.Y.1975) (jurisdiction upheld where defendants entered New York on two occasions and "essential" terms of contract negotiated); *Mendelson v. Fleischmann,* 386 F.Supp. 436 (S.D.N.Y.1973) (terms of brokerage contract agreed to at New York meeting); *Aviation Sales Corp. v. Canada ITW Ltd.,* 346 F.Supp. 864 (E.D.N.Y.1972) (presence of high level officials of defendant during critical start-up phase of disputed contractual relationship); *ECC Corp. v. Slater Elec. Inc.,* 336 F.Supp. 148 (E.D.N.Y.1971) (critical negotiations in New York) with *G.S.C. Assoc. Inc. v. Rogers, supra,* (jurisdiction declined where defendant was present in New York only for "training session"); *Concrete Detailing Services, Inc. v. Thomsson Steel Co., Inc.,* 411 F.Supp. 1021 (S.D.N.Y.1976) (visit by officer followed by extensive telephone conversation concerning performance of the contract at issue held insufficient); *A.I.L., a Division of Cutler-Hammer, Inc. v. Symetrics Ind., Inc.,* 360 F.Supp. 1138 (E.D.N.Y.1973) (visits subsequent to execution of contract held insufficient); *Chertok v. Ethyl Corp. of Canada,* 341 F.Supp. 1251 (S.D.N.Y.1972) (visit by defendant's official, at behest of plaintiff, during which underlying cause of action was discussed, deemed not adequately "purposeful" to support jurisdiction).

**22.** Joice Reply Aff't, ¶ 8.

## III.

For the reasons set forth above, the motion to dismiss the complaint is granted.

It is So Ordered.