**Joseph M. McLOUGHLIN and Elizabeth A. McLoughlin, Plaintiffs,**

v.

**COMMERCIAL AIRWAYS (PTY) LTD. a/k/a Comair, Defendant.**

**W.R. BRYAN, Adele Bryan, Bruce Murray, Alice Murray, Herbert Petry, Josephine Petry, Beauford W. Robinson, Murray Ryan, Dorothy Ryan, William Schooler and Jean Schooler, Plaintiffs,**

v.

**COMMERCIAL AIRWAYS (PTY) LTD. a/k/a Comair, Defendant.**

**Nos. 84 CV 2585, 84 CV 3794.**

United States District Court, E.D. New York.

Jan. 24, 1985.

Kreindler & Kreindler by Gerald A. Robbie, New York City, for plaintiffs.

Brauner Baron Rosenzweig Kligler Sparber & Bauman by Howard L. Simon, New York City, for defendant.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Defendant COMAIR moves for an order dismissing this action on the ground that the Court lacks personal jurisdiction over it or, alternatively, in the event personal jurisdiction is found to exist, on the ground that a New York court is an improper and inconvenient forum to determine this lawsuit.

In this action plaintiffs sue to recover for personal injuries allegedly suffered by them while passengers on a COMAIR flight from Johannesburg, South Africa, to Kruger National Park in Skukuza, South Africa, on October 9, 1982.

COMAIR is a South African corporation located in Johannesburg. It makes domestic flights and operates tours within South Africa.

Plaintiffs Joseph and Elizabeth McLoughlin are residents of the State of Connecticut.[1] They traveled to South Afri-

---

1. The initial plaintiffs in this lawsuit were the McLoughlins. Additional plaintiffs who were on the same aircraft and who also arranged their air transportation through the office of COMAIR's New York agent, later commenced a separate action to recover for their alleged injuries. By agreement of all the parties, the ac-

tions were consolidated; and thus, the decision of the Court, herein, is generally applicable to the consolidated action.

It may be noted that the additional plaintiffs do not destroy complete diversity among all the parties. The other plaintiffs are alleged to be citizens and residents of the following: W.R.

ca as members of a larger group of the Lions International Club ("the Lions Club") from the United States attending an executive meeting in South Africa. From its main office in Chicago, the Lions Club made arrangements in the Fall of 1981 through South African Airways' New York offices ("SAA New York") for the transportation of a group of its 130 top executives from the United States to South Africa and return trip. In connection with these arrangements and at the Lions Club's request, SAA New York booked space for approximately 80 members on a COMAIR tour package, which included round-trip flight from Johannesburg to Kruger Park and back and hotel accommodations at the Park for the night of October 9, 1982. SAA New York telexed a request to COMAIR for reservations, which COMAIR confirmed by reply telex. Payment for the COMAIR flights and accommodations were made by the Lions Club to SAA New York, which in turn remitted the funds to COMAIR.

In perfecting the foregoing arrangements, SAA New York operated under and pursuant to an exclusive General Sales Agency Agreement which it had made with COMAIR on August 25, 1972, wherein it was prescribed that "the General Sales Agent [SAA New York] shall perform the following functions on behalf of the Principal [COMAIR]":

(a) soliciting and promoting traffic for the services of the Principal and, if necessary, employing staff competent and sufficient to do so;

(b) with respect to passengers' transportation, holding out a passenger reservations facility to sales agents and the general public in the assigned territory;

(c) selection, appointment and cancellation of approved sales agents in accordance with the terms of the I.A.T.A. Resolutions;

(d) supervision and instruction of the Principal's sales agents in the territory of the General Sales Agent and settlement of accounts with said agents in respect of sales effected on the traffic documents of the General Sales Agents;

(e) display to the reasonable satisfaction of the Principal of timetables and other publicity material provided by the Principal at the premises of the General Sales Agent and the distribution of said timetables, publicity and information material to sales agents and other interested parties in accordance with the reasonable requirements of the Principal. Publicity material provided by the Principal and of a permanent or intrinsic value shall remain the property of the Principal;

(f) organization of special publicity or press campaigns for the Principal if and when required; the cost of such special campaigns to be separately agreed between the parties and paid for by the Principal;

(g) to take all reasonable action to enhance the goodwill of the Principal in the Territory of the General Sales Agent in the Principal's relations' with the press, the general public and other persons;

(h) compilation and prompt despatch of such statistics and reports as may reasonably be required by the Principal;

(i) preparation of all documents required by national or international regulations or by internal regulations of the Principal, such as declarations for fiscal purposes;

(j) causing or arranging for consignments to be delivered to the receiving points designated by the Principal (with respect to cargo transportation).

In addition, under the agreement, SAA New York agreed "to follow to the best of its ability reasonable instructions" of CO-

and Adele Bryan of Arizona; Bruce and Alice Murray of Canada; Herbert and Josephine Petry of Texas; Beauford W. Robinson of Missou-

ri; Murray and Dorothy Ryan of Maryland; and William and Jean Schooler of Indiana.

MAIR based on the applicable orders and regulations of the appropriate authorities.

Notwithstanding the broad functions which the General Sales Agency Agreement prescribed should be performed by SAA New York, it now maintains that it is limited to the booking activity described above and the following functions:

(1) providing SAA passengers with a copy of COMAIR's travel brochure on request;

(2) carrying COMAIR's advertisements (which are separately paid for by COMAIR) in SAA's trade publication, which is distributed throughout the United States, including New York; and

(3) acting as a conduit for information about reservations on COMAIR tour packages and flights upon request of a passenger or travel group.

Under such circumstances, COMAIR maintains that its activities in New York are "mere solicitations" of business, do not constitute "doing business" in New York and do not constitute transaction by it or through an agent of any business within New York under N.Y. Civil Practice Law and Rules §§ 301 and 302.

The traditional rule in New York has been that "mere solicitation" of business in this State is not sufficient to constitute "doing business". Something, but not very much, more is required.

There is no question here but that SAA New York is the agent of COMAIR. The rule nonetheless seems to be that only the acts of the agent (SAA New York), *as agent,* may be attributed to the principal (COMAIR), and only those acts may properly be factored into the "doing business" equation.

■ In the case at bar the agent (SAA New York) was indisputably doing business in New York; it had an office, employees, telephones, etc., and concededly it used a portion of each of these as agent for CO-MAIR in a continuous and systematic course of activity over a period of 12 years to (i) solicit business for, (ii) book reservations with, (iii) accept and transmit cash payments for air transportation to, and (iv) distribute public information on behalf of, COMAIR. Under *Frummer v. Hilton Hotels International,* solicitation, public relations, publicity, and booking reservations, or in short, the fact that the agent did all the business which the defendant could do in New York were it here by its own officials, was sufficient to constitute doing business under CPLR § 301. 19 N.Y.2d 533, 537–38, 281 N.Y.S.2d 41, 44–45, 227 N.E.2d 851 (1967).[2]

Moreover, it is even clearer that CO-MAIR transacted business within this State through its agent, SAA New York, within the meaning of CPLR 302(a)(1); *Parke-Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970); *Traub v. Robertson-American Corp.,* 82 Misc.2d 222, 368 N.Y.S.2d 958 (Sup.Ct.1975), and that such business "was reasonably related" to plaintiffs' cause of action. *Traub,* 368 N.Y.S.2d at 965; *see also Singer v. Walker,* 15 N.Y.2d 443, 466–67, 261 N.Y.S.2d 8, 26–27, 209 N.E.2d 68 (1965).

Thus, this Court has personal jurisdiction over the defendant and the latter's motion to dismiss for lack thereof must be denied.

Alternatively, defendant moves to dismiss on the ground of *forum non conveniens.*

■ When the doctrine of *forum non conveniens* comes into play, "it presupposes at least two forums in which the defendant is amenable to process", the doctrine merely furnishes the criteria for choice between them. *See, e.g., Gulf Oil Corpora-*

---

**2.** The Court of Appeals in *Frummer* recognized the implications of its decision for foreign corporations, stating:

We are not unmindful that litigation in a foreign jurisdiction is a burdensome inconvenience for any company. However, it is part of the price which may properly be demanded of those who extensively engage in international trade.... [T]hey received considerable benefits from such foreign business and may not be heard to complain.

19 N.Y.2d at 538, 281 N.Y.S.2d at 45, 227 N.E.2d 851.

*tion v. Gilbert,* 330 U.S. 501, 507–09, 67 S.Ct. 839, 842–43, 91 L.Ed. 1055 (1947). In the present case, the defendant has failed to demonstrate why it is not amenable to process here. According to the Warsaw Convention, the defendant through its relation to SAA New York is clearly and properly amenable to suit here. Article 1(3) of the Warsaw Convention provides:

> Transportation to be performed by several successive air carriers shall be deemed, for purposes of this Convention, to be one undivided transportation, if it has been regarded by the parties as a single operation, *whether it has been agreed upon under the form of a single contract or a series of contracts, and it shall not lose its international character merely because one contract or a series of contracts is to be performed entirely within [one] territory ....*

(Emphasis added.)

The law seems clear that where, as here, the parties arrange and pay in full for an international trip at the outset, each leg of the journey (even though some legs may be wholly domestic, covered by a separate ticket and carried on a separate airline) is within the Convention. *Egan v. Kollsman Instrument Corp.,* 21 N.Y.2d 160, 167–68, 287 N.Y.S.2d 14, 18, 234 N.E.2d 199 (1967); *see also Stratis v. Eastern Air Lines, Inc.,* 682 F.2d 406, 409–14 (2d Cir.1982); *Berner v. United Airlines, Inc.,* 3 A.D.2d 9, 157 N.Y.S.2d 884 (1st Dep't 1956), *aff'd,* 3 N.Y.2d 1003, 170 N.Y.S.2d 340, 147 N.E.2d 732 (1957) (lower court held Warsaw Convention applicable and found jurisdiction over defendant who was "doing business" through an agent).

The Warsaw Convention specifically permits under Article 28(1) that an action may be brought in at least four places against a defendant; these are (i) the domicile; (ii) the principal place of business of the carrier; (iii) the carrier's place of business through which the contract was made; and (iv) the place of destination. These choices were essentially for the convenience of the carrier and the litigation. Applying Article 28 to the case at bar, there appear to be only two proper forums, the United States and South Africa.

 As noted above, the doctrine of *forum non conveniens* dictates that this Court should consider a range of factors in choosing between proper forums, "[b]ut unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert,* 330 U.S. at 508, 67 S.Ct. at 843. Here, this Court finds that the defendant has not met this heavy burden of persuasion, and thus, the presumption in favor of the plaintiffs' forum choice rests undisturbed.

For the foregoing reasons defendant's motion must be and the same hereby is denied in all respects.

SO ORDERED.